Monmouth County Circuit Court.

IN THE MATTER OF THE CONTEST OF THE ALLEGED ELECTION OF JOSEPH L. DONAHAY, TO THE OFFICE OF SURROGATE OF MONMOUTH COUNTY, STATE OF NEW JERSEY.

Decided June 11, 1943.

For the petitioner, *J. Victor Carton, John M. Pillsbury* and *Charles Frankel.*

For the incumbent, *Ward Kremer* and *Joseph F. Mattice.*

KINKEAD, C. C. J.    E. Donald Sterner (hereinafter referred to as the contestant), has filed a petition in the Monmouth Circuit Court, contesting the alleged election of Joseph L. Donahay (hereinafter referred to as the incumbent), to the office of surrogate of Monmouth County, New Jersey, in accordance with the provisions of *R. S.* 19:29-2, *et seq.; N. J. S. A.* 19:29-2, *et seq.*

The petition alleged that, at the general election held in Monmouth County on November 3d, 1942, the incumbent was declared elected as surrogate by a margin of 84 votes; that, as a result of a recount held in 80 of the 153 election districts in Monmouth County, the plurality of the incumbent was reduced to a total of 14 votes; that, as a result of the malconduct, fraud or corruption on the part of the members of the district board of the third district in the third ward of the City of Long Branch, no election was held in

said district, in accordance with the provisions and within the intent of the Election Law, and that there should be eliminated and rejected in the result of the aforesaid election, the entire vote cast for the office of surrogate of Monmouth County in said district; that the Circuit Court should pronounce judgment setting aside the vote cast in said district, (thereby nullifying a plurality of 174 votes in that district in favor of the incumbent) ; that the certificate of election heretofore issued to and received by the incumbent should be canceled, set aside, and annulled by the court; and that the court should pronounce judgment that the contestant was duly elected to the office of surrogate of Monmouth County, and entitled to receive a certificate of election to the said office.

The incumbent filed an answer denying the allegations of fraud set forth in the petition, and also filed a counter-claim. The counter-claim alleged that there was gross malconduct, fraud and corruption upon the part of the members of the district boards in the first, second, third and fourth election districts of the Borough of Belmar; that the court should set aside the votes cast in said districts (thereby nullifying a plurality of over 500 votes in favor of the contestant in said districts) ; that the Monmouth County Board of Elections made an error in counting, canvassing and declaring the vote of men in the armed forces of the United States at said election, and that the said County Board of Canvassers did not determine, prior to counting and canvassing the said vote, whether the members of the armed forces were registered or not, as required by law; and that the court should declare that the incumbent had been duly elected to the office of surrogate of Monmouth County on November 3d, 1942.

The contestant moves to strike out the answer and counter-claim on two grounds: (1) that the answer and counter-claim are without legal merit; (2) that the answer and counter-claim are improper, and that there is no statutory authority for same.

When the matter was argued orally before the court, the contestant conceded that the answer of the incumbent was proper, in so far as it constituted merely an answering plea

to the allegations of the petition. The argument, therefore, was confined solely to the legality of the counter-claim.

At the outset, it must be kept in mind that the contestant did not recount the votes in the entire 153 election districts in the county. Rather, he chose but 80 of those districts for a retally, and the presumption naturally is, that he chose the districts where a recount would be most likely to result favorably to him.

In any event, when, at the conclusion of the recheck of 80 districts, the contestant was still 14 votes behind, the incumbent was precluded from ascertaining what a recount of the remaining 73 election districts in Monmouth County would demonstrate. Under the provisions of *R. S.* 19:28-4; *N. J. S. A.* 19:28-4, the incumbent can only proceed to recount any remaining districts wherein he was a candidate, if the contestant has gained the lead as the result of a partial recount.

Thus, if the motion to strike the counter-claim were to prevail, the incumbent would be powerless, either in these proceedings, or in the recount proceedings, to prove that he had been elected surrogate by the electorate of Monmouth County. Under those circumstances, it would be possible for a contestant, by clever maneuvering, to gain an unfair advantage over an incumbent, and to practically frustrate an incumbent from demonstrating in a Circuit Court proceeding, what the will of the voters in a certain election had been.

In the instant case, the contestant has chosen a district wherein he alleges that fraud was committed. The law gives him the right to have the entire vote of that district rejected, if he can prove to the satisfaction of the court, that fraud has been perpetrated in said election district by the officers of election, or permitted by them, to such an extent and character, that the correct and genuine result cannot be determined with reasonable certainty. *Burkett* v. *Francesconi*, 127 *N. J. L.* 541; 23 *Atl. Rep.* (2d) 780.

If the evidence submitted by the contestant should impel the court to reject the entire vote cast for the office of surrogate in the third district of the third ward of Long Branch, it would seem **unconscionable** to bar the incumbent from

submitting evidence to sustain the incumbent's allegations of fraud in the first, second, third and fourth districts of Belmar.

To sustain such a contention, the court would have to conclude that the legislature intended to give a contestant in an election contest a distinct advantage over an incumbent. Common sense, however, points rather to the inevitable conclusion, that the legislature was endeavoring to provide, by this legislation, the means by which a contestant or an incumbent, who had been honestly elected to an office by the votes of his fellow citizens, could prove his right and title to that office, and have the Circuit Court pronounce judgment in his favor.

The contestant contends that this proceeding is purely a statutory one. The court agrees that it is quite clear that the decisions of our state so hold. *Clee* v. *Moore*, 119 *N. J. L.* 215; 195 *Atl. Rep.* 530; *Burkett* v. *Francesconi, supra.* But the court cannot agree with contestant's contention, that there is no statutory provision which would entitle the incumbent to demonstrate that fraud had been committed against him, in certain election districts, and that the court must confine itself, exclusively, to the allegations of fraud set forth by the contestant.

*R. S.* 19:29-5; *N. J. S. A.* 19:29-5, provides: "The proceedings shall be similar to those in an action at law so far as practicable, but shall be under the control and direction of the court, which shall hear and determine the matter without a jury, with power to order any amendments in the petition, or proceedings as to form or substance, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either party, on such terms as shall seem reasonable to the court, the grounds for such adjournment being shown by affidavit."

Certainly, if the proceedings are to be similar to those in an action at law, the incumbent's counter-claim must be sustained, for a counter-claim is a common and perfectly proper pleading in an action at law.

A further perusal of *R. S.* 19:29-5; *N. J. S. A.* 19:29-5, and also *R. S.* 19:29-6; *N. J. S. A.* 19:29-6, which is as

follows: "The court may compel the attendance of any officer of such election and of any other person capable of testifying concerning the same, and also compel the production of all ballot boxes, books, papers, tally lists, ballots and other documents which may be required at such hearing. The style, form and manner of service and process and papers, and the fees of officers and witnesses, shall be the same as in the circuit court in other cases, as far as the nature of the case admits," leads the court to conclude that, by these statutes, the legislature had intended to, and did, empower the Circuit Court in an election contest, to ascertain the merits and the justice of a dispute between a contestant and an incumbent. By these statutes, it is quite obvious that the legislature did exactly what the citizens of New Jersey would propose that it should do, namely, to give to each party, in an election contest, his day in court, to the end that the Circuit Court might determine what the will of an electorate in an election had been, and to pronounce judgment accordingly.

The motion of the contestant is denied.