39 N.J. Super. 520 (1956)
121 A.2d 552
IN THE MATTER OF THE PETITION OF SAMUEL A. WADE FOR A RECOUNT FOR THE ELECTION OF THE MEMBER OF THE CUMBERLAND COUNTY BOARD OF CHOSEN FREEHOLDERS FOR THE FIRST WARD OF THE CITY OF BRIDGETON, CUMBERLAND COUNTY, NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1956.
Decided March 23, 1956.
*521 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. David L. Horuvitz argued the cause for appellant (Mr. Bertram R.B. Aitken, attorney).
Mr. William Gallner argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from an order of the Cumberland County Court declaring Samuel A. Wade *522 the successful candidate for member of the Cumberland County Board of Chosen Freeholders from the First Ward of the City of Bridgeton, at the November 8, 1955 election, and directing the Chairman and Clerk of the County Board of Canvassers to issue a certificate of election to him.
Wade was the Democratic candidate, and W. Lowell Campbell the Republican candidate, for freeholder at the general election. The local election board certified that Campbell, the appellant, had been elected by a vote of 404 to 403 for his opponent Wade. Wade thereupon filed a complaint in the Cumberland County Court seeking a recount under N.J.S.A. 19:28-1 et seq. The Cumberland County Board of Elections conducted the recount and by majority vote determined that Campbell had received 402 votes and Wade 400, and 6 ballots were referred to the County Court as disputed. These ballots are marked R-1, R-2, D-1, D-2, D-3 and D-4, the R standing for Republican and the D for Democrat. The court determined that ballots R-1 and D-4 were a nullity, that ballots D-1, D-2 and D-3 should be counted for Democratic candidate Wade, and that the voter on ballot R-2 did not intend to vote for Republican candidate Campbell and it could not be counted. The result was that three votes were added to Wade's previous total, making the final vote 403 for Wade and 402 for Campbell. Campbell appeals. We will discuss the disputed ballots in the same order as they were taken up by the County Court and in the briefs of counsel.

BALLOTS R-1 AND D-4
Both of these ballots present the same question. Since one was cast for Wade and the other for Campbell, it makes no difference how the question is decided. Neither party particularly stresses the correctness or incorrectness of the County Court's ruling that both ballots were invalid, since they obviously offset each other. We therefore pass the question of their validity.

*523 BALLOT R-2
The voter in this case apparently started to vote for Campbell. He drew a diagonal line running from the upper left to the lower right corner of the box opposite Campbell's name, and then drew a series of very closely spaced lines in the opposite direction over this mark, which filled the box and extended beyond it. The trial judge correctly ruled that the vote was ineffectual, describing the marking as "the normal marks of cancellation." In the first place, disregarding the obliteration, the single diagonal line in the box is not the cross (X), plus (+) or check (&check;) required by the statute, N.J.S.A. 19:15-27. Secondly, even if there were an X in the box, the superimposed series of lines clearly indicates that the voter intended cancelling out what he had started to do. To count a vote for a particular candidate, the district election board is required to find that "proper marks are made in the squares to the left of the names of any candidate in any column * * *." N.J.S.A. 19:16-3(a). As noted, N.J.S.A. 19:15-27 indicates what is a "proper" mark. And N.J.S.A. 19:16-3(f) refers to the counting of ballots "for such other offices as are plainly marked." What is contained in the box opposite Campbell's name on ballot R-2 cannot be described as either a proper mark or a plain marking.
If we are to follow the principle that effect must be given to the intent of the voter where such intent can be determined with reasonable certainty, we must do so by giving as much weight to his intent not to vote, or to cancel his vote, as we do respecting his intent to cast a vote. In the case of this ballot the voter chose not to make a selection for assemblyman, voted only for the full-term coroner, chose to obliterate his vote for freeholder, cast only one vote for city council where he could have cast two, and neglected to vote for city treasurer. He voted on all three public questions at the bottom of the ballot. His activity for the day can be simply stated: he voted Republican for coroner, *524 Democratic for city council and scratched his vote for freeholder.

BALLOT D-1
Both parties agree that this ballot should be counted for Democratic candidate Wade.

BALLOT D-2
The marking on the ballot in the box for candidate Wade, as in the case of all the other Democratic candidates, consists of a straight line, beginning in the lower left-hand part of the box and running upward and to the right beyond the outline of the box, in the same direction as a check mark would be made. This marking is not a check mark, for it does not have the short hook end which marks the beginning of and is necessary to constitute a check mark, as provided for by law. N.J.S.A. 19:15-27 definitely indicates, by words and symbols, the three kinds of markings (already referred to) permitted on a ballot. These are again set out in N.J.S.A. 19:16-3(d) and (g). The top of the ballot itself gave clear instructions to the voter that "The only kind of a mark to be made on this ballot in voting shall be a cross X, plus +, or check &check;." These markings are referred to in the first five of the six instructions, the sixth enjoining the voter that he do not mark the ballot in any other manner than provided for.
The mark which the voter made in the Wade box is not any one of the three allowed. He may very well have intended to vote for Wade and the other Democratic candidates, but we are not at liberty to validate the ballot when he failed to mark it in the manner which the statute commands. There were undoubtedly good policy reasons for the Legislature limiting the marking of a ballot to the three ways mentioned. We note, incidentally, that the voter who cast ballot D-2 knew exactly how to make a check mark, because in the public questions appearing at the bottom of the ballot he voted in favor of all three by making a very distinct check mark in the respective boxes.
*525 Wade contends the marking on D-2 is "substantially" a check mark, referring to N.J.S.A. 19:16-3(g). We cannot agree. We do not think a straight line is "substantially" a hooked check. We conclude that the County Court was in error in holding that ballot D-2 should be counted for Wade, and that this vote for freeholder must be considered a nullity.

BALLOT D-3
The County Court judge determined that this ballot should be counted for Wade, and we agree. The voter made a distinct and careful X in the box opposite Wade's name. In the box opposite Campbell's name there is evidence that an X had originally been marked there, and that the voter then tried to erase it. The original ballot was, in this case as in the other five, exhibited to the court. The original X is but faintly discernible under the smudging of the obvious erasure. The erasure practically eliminated any discernible identification of the original mark.
The County Court judge was satisfied that the erasure and the impressions in the box opposite Campbell's name were not intended by the voter to identify or distinguish the ballot. We are in accord that ballot D-3 is not void under N.J.S.A. 19:16-4, but should be counted in favor of Wade under N.J.S.A. 19:16-3(a) and (f). This accords with the decision of this court in Goddard v. Kelly, 27 N.J. Super. 517 (App. Div. 1953).
In summary, the County Court judge was correct in his rulings as to ballots R-2, D-1 and D-3, but not as to ballot D-2. Assuming that ballots R-1 and D-4 were correctly ruled upon (a question we have not found it necessary to decide) the result is that Campbell's tally remains the same  402  and Wade's count is reduced from 403 to 402. The order under appeal must therefore be reversed and the election adjudicated a tie.