85 N.J. Super. 188 (1964)
204 A.2d 351
IN THE MATTER OF THE PETITION OF WALTER C. KEOGH-DWYER, A CANDIDATE FOR THE OFFICE OF MEMBER OF THE VERNON TOWNSHIP COMMITTEE TO CONTEST CERTAIN ERRORS MADE IN THE CANVASS OR COUNT OF VOTES IN THE GENERAL ELECTION OF NOVEMBER 5TH, 1963.
Superior Court of New Jersey, Appellate Division.
Argued August 10, 1964.
Decided October 5, 1964.
*191 Before Judges LEONARD, CONKLIN and PASHMAN.
*192 Mr. Donald L. Kovach argued the cause for appellant (Messrs. Honig & Kovach, attorneys).
Mr. Frank A. Dolan argued the cause for petitioner-respondent and cross-appellant.
The opinion of the court was delivered by LEONARD, J.S.C. (temporarily assigned).
This appeal involves an election contest. Appellant Everett C. Martin (hereinafter referred to as Martin), defeated petitioner-respondent and cross-appellant Walter C. Keogh-Dwyer (hereinafter called Keogh) in the 1963 primary election for the Republican nomination for the office of Vernon Township committeeman. At the following general election, held on November 5, 1963, Keogh became an independent write-in candidate for said office. The results of the general election as determined by the local district election boards were as follows: Martin 373; Keogh 371, and one Phillips, the Democratic candidate, 192.
A recount at the request of Keogh pursuant to N.J.S.A. 19:28-1 et seq. by the Sussex County Board of Elections and the County Court, acting where said Board did not agree, resulted in the following vote totals: Martin 368, Keogh 363, Phillips 192.
On December 5, 1963 Keogh, pursuant to N.J.S.A. 19:29-1 et seq. filed an election contest petition in the Superior Court. After a hearing judgment was entered on January 21, 1964 declaring the election between Martin and Keogh to be a tie, each receiving 372 votes. The judgment further provided that said election "be set aside" and that the certificate of election of Martin "be revoked and annulled."
We are requested to review the determination of the court below as to 32 ballots, 27 submitted by Keogh and 5 by Martin, and, further, the determination of the court below that 3 civilian absentee voting certificates were invalid.
We shall first consider the afore-mentioned 27 ballots in the four categories or groups as they were considered below and argued herein.

*193 GROUP ONE (8 ballots)
The county board of elections voided these 8 ballots cast for Keogh on the ground that they bore distinguishable or identifiable marks thereon. The court below reversed this determination, validating the same and counting them for Keogh. The pertinent portion of N.J.S.A. 19:16-4 provides as follows:
"No ballot which shall have, either on its face or back, any mark, sign, erasure, designation or device whatsoever, other than is permitted by this Title, by which such ballot can be distinguished from another ballot, shall be declared null and void, unless the district board canvassing such ballots, or the county board, judge of the Superior Court or other judge or officer conducting the recount thereof, shall be satisfied that the placing of the mark, sign, erasure, designation or device upon the ballot was intended to identify or distinguish the ballot." (Emphasis added)
In Bliss v. Wooley, 68 N.J.L. 51, 54 (Sup. Ct. 1902), the court said:
"The election act was only intended to defeat a ballot which was so marked that it was apparent that the voter had for some purpose, corrupt or otherwise, so marked it, or permitted it to be marked, that it could be identified or distinguished from `any other ballot' used at such election."
Not every mark on a ballot makes the same null and void. It is only a mark that was placed thereon by the voter with the intention to identify or distinguish the ballot that so voids the same. Goddard v. Kelly, 27 N.J. Super. 517 (App. Div. 1963), and Petition of Wade, 39 N.J. Super. 520 (App. Div. 1956).
We shall individually review these ballots.
District 1, Ballot 18 and District 2, Ballot 6. In each of these a Keogh sticker was properly placed and marked. In addition, the name of the candidate was written thereon in pencil.
District 1, Ballot 19. Keogh's name was written in, crossed out, rewritten on the line below and properly marked. All of this was in the personal choice column.
*194 District 2, Ballots 2 and 3. On each of these the voter placed an "x" opposite "yes" and opposite "no" on two of the public questions contained thereon. The vote for Keogh was properly placed and properly marked on each.
District 2, Ballot 9. There were two marks as aforesaid on the public question, but one was stricken out. The vote for Keogh was properly placed and marked.
District 2, Ballot 11. An "x" had been inserted and crossed out in the personal choice column for freeholder, although no name had been pasted or written thereon. The vote for Keogh was properly placed and marked.
The court below was satisfied that the marks on all of these seven ballots were not intended to identify or to distinguish them, and accordingly all were counted for Keogh. We are in accord therewith. There is no evidence present herein to support a finding of an intention to identify or distinguish the ballot.
District 2, Ballot 8. While this ballot was considered below in this group, it presents a distinct problem. Keogh's name was printed thereon in pencil. The marking in the square to the left thereof consisted of a single straight diagonal line running from the lower left of the printed square to the upper right thereof, all within said square and not touching the printed sides thereof. From observation it appears as if the voter then starting at the top of said line, came back down thereon for a very small portion and then made an infinitesimal line straight down so that the mark appeared to be thus: [/]. The court below did not count this ballot for Keogh. We concur in that determination.
N.J.S.A. 19:15-27 clearly and definitely, by words and symbols, indicates the three kinds of marks required to vote for a candidate, to wit: "a cross X, plus + or check &check;." The top of the ballot contains specific instructions that the above markings shall be "The only kind of a mark to be made on this ballot in voting." These marks are referred to in the first five of the six instructions, the sixth enjoining the voter not to mark the ballot in any other manner.
*195 Keogh contends the mark to be "substantially" a check in conformity with N.J.S.A. 19:16-3(g). We do not agree. This mark is not substantially a hooked check. It is not argued that it is a cross or a plus. We therefore determine that said mark on this ballot is not any one of the three marks required. The voter might have intended to vote for Keogh, but as we have said in Petition of Wade, supra, at p. 524, "we are not at liberty to validate the ballot when he failed to mark it in the manner which the statute commands. There were undoubtedly good policy reasons for the Legislature limiting the marking of a ballot to the three ways mentioned." (Emphasis added) As in Wade, here too the voter knew exactly how to make a "&check;" because in his vote for a candidate for freeholder and on the six public questions contained on the top of this ballot he marked his choice clearly by marking a very distinct check mark within the respective squares.
Keogh further argues that this ballot should be counted for him even if no mark were placed in the square. This position is considered in our disposition of the ballots in Group Four.

GROUP TWO (1 ballot)
The single ballot involved herein is District 1, Ballot 24. Keogh's name thereon is written in an excellent hand in the personal choice column. Upon close observation and in good light there appears to be in the square to the left thereof a slight indentation of an "x," but it has no color. The impression thereof can only be seen by carefully and closely inspecting the reverse side of this ballot. From our observation of the front side thereof, it appears that either the mark was made by some instrumentality other than a pen or pencil, or the voter erased an "x" theretofore made. The latter interpretation is supported by a close inspection of the front of the ballot where it can be noted that portions of the printed square to the left of the written name and a part of the black printed dividing line of the columns appear to be lighter than the rest thereof and bear signs of erasure. The *196 voter did not vote for Martin. His marks for the four other candidates and for the six public questions are clearly and distinctly made and are readily discernible.
Whether we construe this ballot as containing a faint mark or an erasure of a previous mark, we concur with the finding of the court below in its determination that it cannot be counted for Keogh. To count a vote for a particular candidate, the district election board is required to find that "proper marks are made in the squares to the left of the names of any candidates in any column * * *." N.J.S.A. 19:16-3(a). The ballot must be plainly marked. Petition of Wade, supra, at p. 523. See Goddard v. Kelly, supra, 27 N.J. Super. 517 (App. Div. 1953). The mark herein cannot be described as either a proper or plain mark.
Keogh argues herein that we must give effect to the intent of the voter where such intent can be determined with reasonable certainty. If this be so, we must also give as much weight to his intention not to vote or to cancel his vote as we do respecting his intent to cast a vote. Wade, supra.
Keogh further argues herein, as he did previously with regard to the last ballot in the prior group, that this vote should be counted for him even if no mark was placed in the square. As we have indicated previously, this position will be treated in our disposition of the ballots in Group Four.

GROUP THREE (4 ballots)
District 1, Ballot 4; District 2, Ballot 14. On each of these ballots the voter placed a Keogh sticker over Martin's printed name in the Republican column and put a mark in the box to the left thereof. The court below counted these two ballots for Keogh.
District 1, Ballots 5 and 16. On each of these, the voter placed a Keogh sticker over Martin's printed name as aforesaid, but did not place a mark in the square. The court below did not count these two for Keogh.
N.J.S.A. 19:14-4 provides for the form of the ballot and "Instructions to the voter." Subsection (4) thereof provides:
*197 "To vote for any person whose name is not printed on this ballot, write or paste the name of such person under the proper title of office in the column designated personal choice and mark a cross X, plus +, or check &check;, in the square to the left of the name so written or pasted."
Each of the four ballots involved herein contained this instruction thereon.
N.J.S.A. 19:15-28 likewise provides for the voting for any person whose name is not printed on the ballot by writing or pasting his name "in the column designated personal choice" and placing a proper mark in the square to the left of said name.
N.J.S.A. 19:16-3(d) provides that the district board shall count the votes as follows:
"d. Where the name of any person is written or pasted in the column designated personal choice, and a cross X, plus + or check &check; appears in the square to the left of the name, it shall be counted as a vote for such person." (Emphasis added)
Keogh contends the above two sections are directory and not mandatory, and further, the question of where to write in or paste the name of a personal choice candidate is not governed by them but by N.J.S.A. 19:16-3(a), which provides as follows:
"If proper marks are made in the squares to the left of the names of any candidates in any column and the total number voted for, for each office, does not exceed the number of candidates to be elected to each office, a vote shall be counted for each candidate so marked."
Keogh argues the words "In any column" disclose a legislative intent to allow a voter to vote for a write-in candidate by writing or pasting his name in any column. We do not so construe this statute. It pertains to the counting of votes. Its provisions as to the same are for a candidate "if proper marks are made in the squares to the left of the names of any candidates in any column." This can only mean a candidate whose name is properly in a column as provided for by other *198 portions of the same section and by other sections of the Election Act. To construe this section as contended for would make subsection (d) of the same section and N.J.S.A. 19:14-4(4), 19:14-6 and 19:15-28 inoperative and meaningless. We must seek to avoid such an interpretation. O'Rourke v. Board of Review, 24 N.J. 607, 610 (1957). The true meaning of legislation must be derived from the whole act and not from any single component part. Denbo v. Moorestown, 23 N.J. 476 (1957). When there is a seeming conflict between a general statute and a specific statute covering a subject in a more minute and definite way, the latter shall prevail over the former. Goff v. Hunt, 6 N.J. 600, 607 (1951). We therefore determine that N.J.S.A. 19:14-4(4), 19:14-6, 19:15-28 and 19:16-3(d), which deal specifically with voting for a person whose name is not printed on the ballot, are the governing sections and that they require that the name be written or pasted in the personal choice column. We also determine that these provisions are mandatory and not directory.
Counsel for Keogh relies upon Wene v. Meyner, 13 N.J. 185 (1953), for the proposition that election laws are to be liberally construed so as to effectuate their purpose, and they should not be construed so as to deprive voters of their franchise or to render an election void for technical reasons. While we concede the validity of this doctrine, we do not feel it is applicable to the situation herein. In that case Wene was involved in a primary contest where some of the voters did not sign the necessary formal written party declaration. The court held the failure of the district board to exact the same was a mere irregularity and did not render their votes illegal. That case did not involve the actual markings on the ballot. In fact, the candidate for whom the disputed ballots were cast therein was not known. Wene, supra, at p. 193. The court therein relied upon an opinion by Chief Justice Vanderbilt, Kilmurray v. Gilfert, 10 N.J. 435 (1952). However, the Chief Justice in a dissenting opinion in Wene, at p. 202, while recognizing the rule of Kilmurray, said that "they [the election laws] must at the same time be interpreted and enforced *199 so as to protect the sanctity of the ballot, which is the foundation on which popular government necessarily rests." He also said (at p. 201) that "While no fraud is alleged here, we are bound to construe the act in such a way as to prevent fraud. * * * If the safeguards set up by the Legislature are broken down there will be nothing to prevent the abuse of the right of suffrage."
To approve the method of voting for a personal choice candidate as done herein would open the door to possible fraud. An unscrupulous person who surreptitiously gained possession of a ballot wherein a vote had been properly marked for a candidate whose name was printed thereon could easily cover that printed name with a sticker and the fraudulent act would never be ascertained. This cannot be done under the existing legislative mandate. Under L. 1898, § 59, p. 268, since repealed, a voter could erase any printed name from his ballot and could then write or paste the name of any person for whom he desired to vote. See Carlough v. Ackerman, 74 N.J.L. 16 (Sup. Ct. 1906). The repealer of that law and the present legislative enactment clearly demonstrate an intention to remove the possible frauds and confusions attendant to the old procedure. To hold these sections of the present statute to be regulatory or directory would be virtually a re-enactment of the former statute by the judiciary. This we cannot and will not do. The violation of N.J.S.A. 19:14-4(4), 19:14-6, 19:15-28 and 19:16-3(d) is not a mere technical violation; it is a substantial one. The last quoted section provides for the counting of votes by the district board, not the casting of a ballot by the voter. It provides that the district board shall count a vote where the name is written or pasted in the column designated personal choice. A fair interpretation thereof is that the district board is not to count a vote if it is not so written or pasted. Failure by the district election board to follow this clear mandate will subject it to possible criminal prosecution. R.S. 19:34-48.
We therefore conclude that the provisions of these sections are mandatory and not directory. The voter may have intended *200 to vote for Keogh but, as we have previously said, "We are not at liberty to validate the ballot when he [fails] to mark it in the manner in which the statute commands." Petition of Wade, supra, at p. 524. Consequently, none of these four ballots can be counted for Keogh and therefore two votes must be deducted from the total for him as determined by the court below.

GROUP FOUR (14 ballots)
Keogh's name appears on all of these ballots in the personal choice column, but the voter on each failed to put a cross or a plus or a check mark in the square to the left of the name. The court below did not count any of these for Keogh. N.J.S.A. 19:14-4(4), 19:14-6, 19:15-28 and 19:16-3(d) each clearly mandate that a voter who desires to vote for a person whose name is not printed on the ballot must perform two separate acts: (1) write or paste the name of such person in the personal choice column, and (2) mark a cross X, plus + or check &check; in the square to the left of the name so written or so pasted. Each ballot contains this specific instruction. These legislative mandates as to the method of marking the ballots go to the heart of our election laws: it is "the essence of the thing required." Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951). To construe them as other than mandatory would imperil the whole orderly electoral process and could only lead to mass confusion and possible fraud. What we have heretofore said under Group Three applies with equal force herein.
That these votes cannot be counted has been heretofore determined. In re Election for Mayor, Borough of Lavallette, 9 N.J. Misc. 25, 152 A. 641 (Sup. Ct. 1930). In that case Justice Bodine stated:
"It is apparent that the legislative enactment was intended as a general regulation of the whole matter of elections, and that under the legislative scheme no authority exists to count ballots not marked in accordance with law.
*201 The argument in behalf of Mr. Van Camp is that the intention of the voter is defeated by not counting the ballots in which the voter has written in in the column of personal choice the name of his candidate but has failed to mark to the left thereof any plus + or cross X mark. By the form of ballot prevailing in this state, the voter is given ample instructions as to the manner in which he shall express his preference. If he fails so to do, no authority exists to express his purpose."
In re Borough of South River, 26 N.J. Super. 357 (Law Div. 1953), is not applicable herein. It involved irregular ballots on a voting machine and not paper ballots. The court therein recognized the provisions of the above statute but limited the same to only paper ballots.
Consequently in our opinion these 14 ballots cannot be counted for Keogh and the action of the court below with respect thereto should be affirmed. The same disposition is made with reference to the two ballots heretofore discussed, i.e., District 2, Ballot 8 in Group One, and District 1, Ballot 24 in Group Two.

THE 5 MARTIN BALLOTS
Of these five offered by Martin, the court below held only four to be valid votes for him. One of these four is specifically challenged by Keogh, i.e., District 2, Ballot 7 (D-4). However, he generally challenges the receipt of the four on the basis that Martin filed no counterclaim and therefore Martin is precluded from a review of additional ballots over and above the ones submitted by Keogh. He relies upon N.J.S.A. 19:29-5, which provides as follows:
"The proceedings shall be similar to those in a civil action so far as practicable, but shall be under the control and direction of the court, which shall hear and determine the matter without a jury, with power to order any amendments in the petition, or proceedings as to form or substance, and to allow adjournments to any time not more than thirty days thereafter for the benefit of either party, on such terms as shall seem reasonable to the court, the grounds for such adjournment being shown by affidavit." (Emphasis added)
This section does not make the practice the same as in a civil action. It merely makes it "similar * * * so far as practicable." *202 However, the proceedings are "under the control and direction of the court." Counsel for Keogh further argues that the practice of an incumbent in an election contest filing a counterclaim was recognized in In re Donahay, 21 N.J. Misc. 159; 32 A.2d 499 (Cir. Ct. 1943). We agree that Donahay recognized the right to file such a counterclaim, but it did not hold that the filing of the same was mandatory. The hearing on Keogh's original petition was held on January 6, 1964 and it lasted from morning until 6:15 P.M. During the course of the proceedings, before the result was announced, counsel for Martin stated: "My position is that the judgment below was accurate but if your Honor finds it was not, then all seven of them will have to be counted. * * * Mr. Martin also had some rejected on the same grounds." When the court concluded its findings with reference to the Keogh ballots, counsel for Martin immediately again made reference to these Martin ballots. The court stated that in view of the hour "I am not going to pass on that now," but stated he would give counsel an opportunity to be heard on such application. No objection was raised at that time by counsel for Keogh. The five ballots were physically present in court at that time. On January 9, 1964 counsel for Martin filed notice of motion for leave to submit these five ballots. At a hearing held thereon on January 14 counsel for Keogh for the first time raised his objection concerning the lack of a counterclaim. In disposing of this the court stated:
"I may be responsible for the course of this hearing. * * * Mr. Kovach spoke up promptly * * * it was a very late hour and I put off dealing with the matter that he did bring up. There is no point coming in now and talking about answers and counterclaims. I didn't proceed that way. It proceeded here on examination of the ballots * * * and I think that common justice calls for the consideration of these ballots and that is my ruling."
N.J.S.A. 19:29-5 gives the trial court broad powers in the control and direction of the proceedings, including the right to order amendments in those proceedings as to form and substance. We do not think the court below abused those *203 powers. We find no error in the submission and consideration of these five ballots under the circumstances hereof.
We therefore now turn to the consideration of the one ballot, District 7, Ballot 2 (D-4). This was one of the five counted by the court below for Martin. The voter thereon voted for three Republican candidates, including Martin and two Democratic candidates, and then wrote the same five names in the personal choice column but did not place a mark in the squares to the left of said write-ins. The determination of whether this ballot should be counted for Martin or not is controlled by N.J.S.A. 19:16-3(f), which provides as follows:
"If a voter marks more names than there are persons to be elected to an office, or writes or pastes the name of any person in the column designated personal choice, whose name is printed upon the ballot as a candidate under the same title of office, or his choice cannot be determined, his ballot shall not be counted for that office, but shall be counted for such other offices as are plainly marked." (Emphasis added)
The section is in the disjunctive, and this ballot violates the italicized portions thereof, even though a mark was not placed in the squares to the left of the write-in names. We therefore conclude that the ballot cannot be counted for Martin and the court below was in error in so doing.

CIVILIAN ABSENTEE VOTER CERTIFICATES
Three civilian absentee voter certificates (P-1, P-2, P-3) were rejected by the county board of elections and by the court below. P-1 and P-2 were executed by a Mr. and Mrs. Burgess. Neither of them contained a check in the appropriate square indicating the reason for voting the absentee ballot, that is, absence from State or disability. P-3 was executed by one Burrows and did not have filled in thereon his address and the length of said residence.
N.J.S.A. 19:57-3 mandates us to construe the absentee voting law liberally to effectuate its purposes. However, *204 this is not a license to completely disregard the clear and explicit provisions thereof which were adopted to preserve the sanctity and proper functioning of the election laws. In re Gould, 81 N.J. Super. 579 (Law Div. 1963). The reason for voting an absentee ballot is the basis of the right of the voter to receive such a ballot. N.J.S.A. 19:57-18 provides that
"In the case of any civilian absentee voter who claims the right to vote by absentee ballot by reason of disability, the voter shall include within the outer envelope a certificate of a duly licensed physician or a duly accredited Christian Science practitioner certifying that the voter is confined by reason of sickness or physical disability and will be unable to cast his ballot at the polling place in the absentee voter's election district on the date of the election. * * *" (Emphasis added)
It is only by stating the reason and, in the event of disability, then by attaching the physician's certificate, that the county board of elections can make the determination required to be made by it by N.J.S.A. 19:57-24 that the voter is legally entitled to vote. If the voter claims he is too ill to go to the polls, his failure to file a medical certificate with his ballot would be fatal, rendering his ballot a nullity. In re Gould, supra. If the reason is not stated, how then, can it be determined whether a physician's certificate is required or not? Although the court in In re Election in Bethlehem Township, 74 N.J. Super. 448 (App. Div. 1962) sustained the validity of certain civilian absentee ballots in which some blank spaces on the left had not been filled in, the court therein noted (at p. 465) that the reason for absence was stated. In re Farley, 78 N.J. Super. 349 (App. Div. 1963), certification denied 40 N.J. 220 (1963), is not factually applicable hereto.
We therefore conclude the omission of these two voters to state the reason why they desired an absentee ballot is fatal, and consequently the action of the trial judge in rejecting the certificates was proper.
We consider next the Burrows' certificate, P-3. N.J.S.A. 19:57-2 defines "civilian absentee voter" to mean, *205 among other things, a qualified voter. As hereinbefore indicated, the county board of elections must determine if the voter is qualified, that is, is he legally entitled to vote? How can the board make this determination without the basic information as to his address and length of residence? There was no evidence before the court below that such information was contained on Burrows' application for an Absentee Civilian Ballot. In In re Election of Bethlehem Township, supra, the certificates that were declared valid contained such information (at p. 456). The court therein stated (at p. 465): "In the case of Kingswood Township, some of the blanks on the left hand side of two certificates were left unfilled. However, the blanks which were filled in were sufficient to supply the missing information." That is not so here. We deem the omissions to be fatal and concur with the action of the court below in rejecting this certificate.
This disposition makes it unnecessary for us to determine the efficacy of the unsupported and unverified belated application of counsel for Keogh to relate this last single certificate.

CONCLUSION
We have thus affirmed the court below with three exceptions. In Group Three we have held two ballots counted below for Keogh to be invalid. We have also held ballot D-4 counted below for Martin to be invalid. Thus, from the determination below of a tie vote between Keogh and Martin, each having 372 votes, we deduct the one vote from Martin and two votes from Keogh. Our final determination of the count of the votes, is as follows: Martin 371, Keogh 370. To this extent the conclusion of the court below is modified. We therefore hold that Martin has been elected and direct the proper certificate of election be issued to him. No costs.
PASHMAN, J.S.C. (temporarily assigned) (dissenting).
I am compelled to respectfully dissent from a most enlightening exposition of the voting law. I find that Keogh-Dwyer *206 was elected. I concur in the entire majority opinion except with regard to the problem of personal choice candidates.
Before considering each of the separate groups of ballots involved, there is one common inquiry which must be made with respect to each of the four categories. The question is whether the requirement of placing a mark to the left of the name of a write-in candidate is mandatory or directory. N.J.S.A. 19:14-4(4) provides:
"To vote for any person whose name is not printed on this ballot, write or paste the name of such person under the proper title of office in the column designated personal choice and mark a cross X, plus + or check &check; in the square to the left of the name so written or pasted."
N.J.S.A. 19:15-28 states:
"Nothing in this Title shall prevent any voter from writing or pasting under the proper title of office in the column designated personal choice the name or names of any person or persons for whom he desires to vote whose name or names are not printed upon the ballot for the same office or offices, and who shall mark a cross X, plus + or check &check; in the square at the left of such name or names. * * *"
These statutory sections have been held to apply only to paper ballots. In re Borough of South River, 26 N.J. Super. 357 (Law Div. 1953), reversed on other grounds 27 N.J. Super. 109 (Law Div. 1953). The trial court held, in reliance upon In re Lavallette, 9 N.J. Misc. 25, 152 A. 641 (Sup. Ct. 1930), that in the absence of an X or &check; mark next to a name written in the personal choice column on a paper ballot, the vote cannot be counted. The judge in Lavallette held the statutory requirements to be mandatory. I cannot agree. Whether a statute is mandatory or not depends upon whether the thing directed to be done is of the essence of the thing required. And what has been made a matter of the essence is often to be ascertained only by judicial construction. Sharrock v. Keansburg, 15 N.J. Super. 11, 17 (App. Div. 1951). This rule has been stated another way in Paramus v. Ridgewood Park Estates, *207 42 N.J. Super. 369 (App. Div. 1956), where the court said:
"Decision as to whether a particular regulation ordained by legislation is imperative or directory is reached by a construction of the entire statute and a consideration of the object sought to be accomplished. When the requirement does not appear to be of the essence of the law, but rather relates to form and manner and is an incident thereof, it is directory." (at p. 375)
Although one of the objects of our election laws is to require uniformity in method of voting, it must be remembered that the ultimate objective of an election is to reflect the intention of the electorate. To this end, our election laws have been liberally construed so as not to deprive voters of their franchise or to render an election void for technical reasons. Wene v. Meyner, 13 N.J. 185, 197 (1953); Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952). The statutory requirements of a mark next to a write-in candidate must be considered directory, for such a mark becomes superfluous once a candidate's name is written in the personal choice column. Although there are instructions on the ballot, I do not believe that a voter would ever consider his ballot invalid when he has taken the time and trouble to write in the name of his personal choice but neglected to place a mark next to the name. Public policy must reflect the common conscience as well as the widely held feelings of the times. Bron v. Weintraub, 42 N.J. 87, 93 (1964).
Thus, any otherwise valid write-in votes for respondent Keogh-Dwyer which lack a mark to the left of the name will be held valid. Anything to the contrary as stated in In re Lavallette, supra, should be overruled.
I agree with the majority disposition of ballots in Group One (eight ballots), except District 2, Ballot 8. This ballot was held invalid because a mark other than a check, plus or x was made next to the written-in name of Keogh-Dwyer. Because of my holding that no mark is necessary where there is an otherwise valid write-in vote, this ballot must be held validly cast for Keogh-Dwyer.
*208 The one ballot in Group Two was held invalid by the trial judge because an x mark could not be perceived next to respondent Keogh-Dwyer's name in the personal choice column. My overruling of Lavallette requires me to reverse the trial judge. Ballot 4 in District No. 1 is held validly cast for Keogh-Dwyer.
I concur with the majority as to Group Three. This decreases Keogh-Dwyer's vote by two.
Group Four contains 14 ballots where respondent's name appears in all of them in the personal choice column, but no x, check or plus is in the box next to his name. The trial judge held these 14 Keogh-Dwyer ballots invalid. Consistent with my previous ruling in this situation, these 14 ballots are to be counted for Keogh-Dwyer.
Ballot 2, District 7 was one of the group of five counted by the court below for Martin. The voter casting this ballot voted for five candidates including appellant. He then wrote the names of these candidates in the personal choice column without placing a mark next to their names. The trial judge sustained the ballot since there was no proof of intention to identify or distinguish the ballot. I agree and am also of the opinion that the write-in votes were merely surplusage.
On balance, the respondent Mr. Keogh-Dwyer has gained 16 votes and lost two. Mr. Martin's total remains the same. Thus, I vote to reverse and declare Keogh-Dwyer the winner of the election by 14 votes.