165 N.J. Super. 468 (1978)
398 A.2d 599
IN THE MATTER OF THE PETITION OF DR. HUBERT H. BYRON, LOUIS E. MEDVED AND ARMANDO MARINO, CONTESTING THE ELECTION OF R. DAVID SPERLING TO THE OFFICE OF MAYOR, AND SAMUEL MARSHALL AND HELEN FARAGO TO THE OFFICES OF COUNCIL OF THE BOROUGH OF WRIGHTSTOWN PURSUANT TO N.J.S.A. 19:29-1 ET SEQ. AND IN THE MATTER OF THE PETITION OF EDWARD G. TYLER.
Superior Court of New Jersey, Law Division.
Decided December 28, 1978.
*470 Mr. Joseph M. Pinto for petitioners (Wrightstown election) (Messrs. Polino & Williams, attorneys).
Mr. John S. Sitzler for defendants (Wrightstown election) (Messrs. Mathews & Sitzler, attorneys).
Mr. William J. O'Byrne for defendants (Wrightstown election).
Mr. Emerson Darnell for intervenor NAACP (Messrs. Darnell & Scott, attorneys).
Mr. Jerrold Kamensky for petitioner Tyler (Fieldsboro election) (Messrs. Tomar, Kamensky & Smith, attorneys).
Mr. Martin J. Queenan for defendant Carnessale (Fieldsboro election).
Ms. Karen Ruth Larson, Deputy Attorney General, for Defendant Burlington County Board of Elections (Wrightstown and Fieldsboro elections).
Mr. M. Jefferson Davis for defendant Burlington County Clerk (Legal Department, Burlington County, attorneys).
HAINES, J.S.C.
Following the November 7, 1978 general election two petitions were filed pursuant to N.J.S.A. 19:29-1 et seq. challenging the validity of elections conducted in the Borough of Wrightstown and the Borough of Fieldsboro. At the court's request, motions for summary judgment were filed in each case concerning a legal issue common to both. The NAACP was allowed to intervene and filed a brief. The cases were consolidated for argument and are considered together in this opinion.
*471 In the Wrightstown election the office of mayor and two seats on the borough council were at stake. The Burlington County Board of Elections rejected 152 absentee ballots, primarily on the ground that they were improperly delivered. This action was commenced by the losing candidates, who contend that the ballots should have been included in the final vote totals. The successful candidates counterclaimed (see In re Donahay, 21 N.J. Misc. 159 (City Ct. 1943)) seeking declaratory relief validating the action of the board and alleging other violations and abuses of the election laws.
In Fieldsboro the same positions were at stake. However, the board of elections counted the 51 absentee ballots that the losing mayoralty candidate now seeks to have voided on the ground of improper delivery and fraud.
In Wrightstown it was stipulated that certain candidates obtained and delivered applications for absentee ballots to the county clerk, who gave them the unmarked ballots for transmittal to the voters. These ballots found their way back to the board of elections by different routes, some by mail, some by hand delivery by candidates or others and some through the county clerk's office to which they had been returned by methods unknown.
It was stipulated that the 51 absentee ballots questioned in Fieldsboro were issued on the basis of applications delivered to the clerk by an interested citizen, to whom in return, the unmarked ballots were delivered for transmittal to the voters. Sixteen or 17 of these unmarked ballots were not transferred directly to the voters, but were given to the initially successful mayoralty candidate for delivery to the voters. All of the ballots were returned to the board of elections by mail.
Central to this inquiry is N.J.S.A. 19:57-11, as amended in 1972. This section states:
Each county clerk shall forward a military service ballot or a civilian absentee ballot, as the case may be, for use under this *472 act by first-class mail or hand delivered to each military service voter who applies therefor or on whose behalf application is made therefor, and whose application is approved in any case where approval is required under section 10 of this act, and to each civilian absentee voter whose request therefor has been approved. Ballots that have not been hand delivered to the voter shall be addressed to the voter at the forwarding address given in the application. All ballots to be forwarded to persons at an address located within the limits of the states of Alaska and Hawaii or anywhere else without the limits of the other 48 states and the District of Columbia shall be forwarded by air mail.
Such ballots shall be so forwarded as soon as practicable after the twenty-fifth day preceding the day upon which any election is to be held.
The controversy centers upon the meaning that is to be given the words "each county clerk shall forward * * * by first-class mail or hand delivered [sic] to each [absentee voter]" a ballot.
The Legislature, in adopting N.J.S.A. 19:57-4, chose to set forth the conditions as well as the procedure pursuant to which the county clerk is authorized to forward an absentee ballot to a voter by messenger. An individual may be used to deliver an absentee ballot only when a voter is sick or confined and has provided a signed designation naming the individual his authorized messenger. No claim is made that any of the voters who received the ballots in issue met either standard or complied with the procedure detailed in the section.
Furthermore, N.J.S.A. 19:57-23, like N.J.S.A. 19:57-11, was amended in 1972 to provide alternative methods for the return of the marked absentee ballots, and likewise speaks in terms of their "delivery." This section requires that an absentee ballot shall "either be mailed with sufficient postage to the county board of elections to which it is addressed or delivered to [said] board." The statement annexed to the 1972 legislation makes it quite clear that the method of delivery envisioned was by the voter himself: "The bill would allow an absentee voter to deliver his ballot to the county board of elections." An established canon of statutory *473 construction is that when a word or phrase appears more than once in a legislative act, the same meaning should be attached to it, unless there is a clear indication to the contrary. See Keith Machinery Corp. v. South Plainfield, 89 N.J. Super. 584, 590-91 (Law Div. 1965), aff'd, 91 N.J. Super. 469 (App. Div. 1966). Application of this principle further supports my reading of the term "delivered" in N.J.S.A. 19:57-11 as requiring that the deliverer, the county clerk, and only the county clerk, transport the ballot to the prescribed recipient, the voter.
Consequently, the only methods by which a county clerk may convey an absentee ballot to a voter are by first-class mail, directly to the voter when he or she appears at the office of the county clerk, or by an authorized messenger when the requirements of N.J.S.A. 19:57-4 are satisfied. Although it was also suggested in the oral opinion rendered in this matter that a county clerk could use a messenger appointed and controlled by him, i.e., one of his employees, to deliver absentee ballots, reflection has led to the conclusion that this suggestion was incorrect. Interpreting the statute so as to permit the personal delivery of ballots to the voters creates problems for which the statute provides no answers. For example, how is it to be determined what voters are entitled to this service or how many messengers are to be employed? If one voter is entitled to delivery, all may be so entitled. The legislature, wisely, has limited delivery by messenger to the sick or confined.
The county clerk, on this analysis, had no authority to delivery absentee ballots to messengers, and it becomes necessary to consider the effect this error has upon the election. Not every failure to comply with the election laws results in the invalidation of an election. See, e.g., Wene v. Meyner, 13 N.J. 185 (1953). Since the public election mechanism is entirely a statutory creation lacking any common-law antecedents, the judiciary must always seek to vindicate the perceived intent of the Legislature in the particular situation. Sharrock v. Keansburg, 15 N.J. Super. *474 11, 16 (App. Div. 1951). Thus, if the election statute "expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of the requirement, uniformly respect the legislative declaration." Id. at 16-17. But if the statute is silent, the legislative will must be found and followed through careful analysis of the statutory language and expressed concerns of the Legislature. Often the label mandatory or directory is appended to the section of the election law implicated as a symbol of the court's determination of the legislative intent. If the section is characterized as one that is mandatory in nature, the ballot or election will be overturned; if the section is characterized as one that is directory in nature, the ballot or election will be upheld. In re Smock, 5 N.J. Super. 495 (Law Div. 1949). But these are only labels  it is still the legislative intent that decides the result. Wene v. Meyner, supra, 13 N.J. at 196.
In DeFlesco v. Mercer Cty. Bd. of Elections, 43 N.J. Super. 492, 496 (1957), the Appellate Division listed the concerns that influenced the enactment of our absentee voting legislation. These concerns include a desire to preserve the enfranchisement of qualified voters, safeguard the secrecy of the ballot, deter fraud and achieve a prompt determination of the election. When the dispute focused on the manner in which the ballot itself was marked in In re Keogh-Dwyer, 85 N.J. Super. 188, 198-99 (App. Div. 1964), rev'd on other grounds 45 N.J. 117 (1965), the Appellate Division emphasized the importance of not sanctioning methods of voting that "would open the door to possible fraud."
The practice engaged in here of delivering unmarked ballots to casual intermediaries or candidates for distribution to the voters invites improprieties of many kinds. When an absentee ballot is carried to a voter by a candidate or partisan, the increased opportunity to improperly influence the vote is apparent. This influence might be exerted through promises (see N.J.S.A. 19:34-39(c)) or threats (see N.J.S.A. 19:34-28). The purpose of prohibiting electioneering *475 within a certain distance of a polling place is obviously undercut by such delivery. See N.J.S.A. 19:34-15. The practice creates an opportunity to forge ballots, destroy those of known opponents and interfere with voting secrecy.
Although the allegations contained in the pleadings and the averments found in affidavits were not relied upon in deciding this motion, they nonetheless dramatize these concerns. Two voters swear that they were promised favorable action on a zoning application in return for signing absentee ballots in blank. Claims are asserted that campaign literature was distributed to voters when the unmarked ballots were delivered and that suggestions were made as to marking ballots. It is charged that the handwriting on many of the absentee ballots was strikingly similar.
There is a close connection between the statutory delivery requirements and legislative concerns about fraud and secrecy. Fraud, in particular, is difficult to prove. The purpose of our statutes is to prevent fraud and preserve secrecy through strict procedural controls. A violation of these procedures, therefore, becomes very significant. Thus, the error here, unlike that in Wene v. Meyner, cannot be described as an "unwitting omission of a formal requirement otherwise supplied in substance." Wene v. Meyner, supra, 13 N.J. at 196.[1]
*476 In short, two of the vital concerns of the Legislature in enacting absentee voting legislation  preservation of the secrecy of the ballot and prevention of fraud  were placed in jeopardy by the procedure adopted in these cases. The importance of vindicating these interests outweighs any countervailing concern over the disenfranchisement of voters. Furthermore, in both cases a sufficient identification of the offending ballots is available to permit their suppression and obtain firm election results. Consequently, the court has concluded that the intent of the Legislature will best be served by voiding the ballots. If the only remedy available was the ordering of new elections, the intent of the legislature would have to be reassessed; proof of actual fraud may be required before that drastic result may occur. Since this problem is not present here, its solution must await another case.
In Wrightstown the 152 wrongfully delivered ballots were not counted. They are not to be counted and the election result is unchanged.
In Fieldsboro 51 disputed absentee ballots were counted. They must be deleted from the final tabulation. There were more than 51 absentee ballots cast and there is no way of distinguishing the particular ballots questioned, but exact identification is not necessary. Tyler received 80 machine votes and 2 absentee votes. Carnassale received 39 machine votes and 77 absentee votes. By subtracting 2 votes from the Tyler total and 49 from Carnassale's total, while awarding the remaining 28 absentee ballots to Carnassale, we reach a result most favorable to the latter but one which does not give him a winning total. This changes the result reached by the board of elections. The certificates of election issued to Edward Carnassale must be annulled and a new certificate issued to Edward G. Tyler. See N.J.S.A. 19:29-8 and 9.
NOTES
[1] There are no recorded decisions in New Jersey dealing with this problem. However, requirements for delivery of ballots, both to and from the voter, have been considered in other jurisdictions. Several courts have refused to void the ballots. In Matter of Rodriguez, 558 S.W.2d 356 (Mo. Ct. App. 1977); Mahaffey v. Gill, 459 S.W.2d 919 (Tex. Civ. App. 1970); Sommerfeld v. Board of Canvassers, 269 Wis. 299, 69 N.W. 235 (Sup. Ct. 1955); Lanser v. Koconis, 62 Wis.2d 86, 214 N.W.2d 425 (Sup. Ct. 1974). All of these courts concluded that they would not disenfranchise voters because of irregularities in the delivery of absentee ballots without showing of actual fraud. Contrary views are found in the following decisions: May v. Wilson, 199 S.C. 354, 19 S.E.2d 467 (Sup. Ct. 1942); Clark v. Quick, 377 Ill. 424, 36 N.E.2d 563 (Sup. Ct. 1941); Larson v. Locken, 262 N.W.2d 752 (S.D. Sup. Ct. 1978); Para v. Harvey, 89 So.2d 870 (Fla. Sup. Ct. 1956); Spradley v. Bailey, 292 So.2d 27 (Fla. Ct. App. 1974). These cases state the better rule; that it is the opportunity to commit fraud, whether or not actually committed or intended, that requires the suppression of ballots improperly delivered.