SCOTT MATARESE, PLAINTIFF, v. SUPERINTENDENT OF ELECTIONS, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided June 30, 1988.

*John E. Harrington* for plaintiff (*Schlesinger, Schlosser, Foy & Harrington,* attorneys).

*Glen Filippone* for county clerk (*Michael J. Hogan,* Burlington County Counsel, attorney).

*John M. Carbone* for defendant (*Carbone & Fasse,* attorneys).

HAINES, A.J.S.C.

█ This opinion addresses the question of whether a county board of elections may reject a civilian absentee ballot issued in

response to a defective application erroneously approved by a county clerk. It concludes that the board is so empowered.

Scott Matarese was a candidate for election to the Lumberton Township Committee in Burlington County. Following the election, he requested a recount of ballots and a recheck of voting machines. During those proceedings a question arose as to whether an absentee ballot should be rejected since the ballot application did not set forth any reason for its issuance. The board of elections, being deadlocked, could not reach a decision and the question was therefore referred to this court pursuant to *N.J.S.A.* 19:57–24.

The issue is novel. At the conclusion of the original argument, this court held that the board of elections had no authority to reject the absentee ballot. On reconsideration, it reverses.

County counsel, appearing for the county clerk, argues that the board has no authority to reject the ballot in question. Her position is that this authority resides only in the county clerk or, when a dispute arises, in this court. The argument rests on *N.J.S.A.* 19:57–10 which provides, in connection with the receipt of a request for an absentee ballot, as follows:

[T]he County Clerk shall, with the cooperation of the Commissioner of Registration, cause the signature of the applicant on the request to be compared with the signature of said person appearing on the permanent registration form in order to determine from such examination and any other available information if the applicant is a voter qualified to cast a ballot in the election in which he desires to vote, and determine in case of a primary election in which political party primary the voter is entitled to vote. The Commissioner of Registration or the superintendent of elections in counties having a superintendent of elections may investigate any application or request for an absentee ballot.

If after such examination, the county clerk is satisfied that the applicant is entitled to a ballot, he shall mark the application "Approved." If after such examination the county clerk determines that the applicant is not entitled to a ballot, he shall mark on the application "Disapproved" and shall so notify the applicant, stating the reason therefor.

Clearly, therefore, the county clerk may reject an application for an absentee ballot. The clerk claims that this authority is his alone and that his delivery of an absentee ballot is conclusive evidence of his approval of the application, an approval

which the board of elections cannot challenge. Matarese correctly argues to the contrary. His argument requires an examination of the statutes affecting the issue. (References to "*N.J.S.A.*" are omitted.)

19:57–3 provides the reasons upon which a registered civilian absentee voter may request an absentee ballot, namely: absence outside the State; inability to vote though present in the State because of permanent and total disability; illness or temporary physical disability; observance of a religious holiday; attendance at a school; college or university, and nature and hours of employment. The application under consideration here, which lists the reasons to support the absentee ballot request and provides blocks to be checked, contains no check marks, and hence, no reasons.

19:57–4 provides that the request for an absentee ballot shall be presented to the county clerk. It says in part: "Such application or request shall be made in writing, shall be signed by the applicant and shall state his or her place of voting residence and the address to which said ballot shall be sent, and the reason for which the ballot is requested."

19:57–10, as noted above, provides the county clerk with authority to reject an application.

19:57–12 provides that the county clerk shall forward absentee ballot "requests, including those disapproved, to the county board of elections." The clerk is also required to keep "a list of such requests received by him showing the disposition of each request, which list shall be made available to the public and all election officials charged with the duty of administering this act."

19:57–16 requires the county clerk, once he has approved the absentee ballot application, to send an absentee ballot with directions for preparation to the absentee voter "together with two envelopes of such sizes that one will contain the other." The outer envelope is addressed to the board of elections, the

inner envelope is designed to contain the ballot and to be sealed to provide secrecy.

19:57–17 requires a certificate to be printed on the flap of the inner envelope sent to the absentee voter and then to the board of elections which provides in part the following:

> I MARKED AND SEALED THIS BALLOT AND CERTIFICATE IN SE-CRET. However, a family member may assist you in doing so. If you are an incapacitated absentee voter, a person other than a family member may also assist you in doing so.

> ———————————————————
> (signature of voter)
>
> Any person providing assistance shall complete the following: I do hereby certify that I am the person who provided assistance to this voter and declare that I will maintain the secrecy of this ballot.

> ———————————————————
> (signature of person
> providing assistance)

19:57–24 provides:

> The county board of elections shall, promptly after receiving each civilian absentee ballot, remove the inner envelope, containing the ballot, from the outer envelope and shall compare the signature and the information contained on the flap of the inner envelope with the signature and information contained in the respective requests for civilian absentee ballots.... The county board shall reject any such ballot unless the board is satisfied as a result of such comparison or by reference to the permanent registration books that the voter is legally entitled to vote and that the ballot conforms with the requirements of this act.

> . . . .

> Disputes as to the qualifications of ... civilian absentee voters to vote or as to whether or not or how ... such civilian absentee ballots shall be counted in such election shall be referred to the Superior Court for determination.

19:57–31 provides that the board of elections shall open the inner envelope containing the absentee ballots "except those containing the ballots which the board or the ... [Superior Court] has rejected," and shall count and canvass the votes cast.

19:57–33 provides:

> The county board of elections shall keep, for a period of 1 year, all of the requests and applications for absentee ballots, all voted absentee ballots, and all

of the certificates which have been detached or separated by them from said inner envelopes, and all inner envelopes together with their certificates, and together with their contents, which have not been opened because the county board or the County [now Superior] Court rejected them. Specific power is hereby granted to the superintendent of elections in counties having a superintendent of elections and the prosecutor in all other counties to impound all absentee ballots whenever he shall deem such action to be necessary.

It is apparent that these statutes limit the authority of the county clerk to the application process in the case of absentee ballots and that his decisions concerning that process do not bind the county board of elections. The clerk is obliged to send absentee ballot request forms to the board of elections. Pursuant to *N.J.S.A.* 19:57-24, the board is to compare the certificate contained on the flap of the inner absentee ballot envelope "with the signature and information contained in the respective requests for civilian absentee ballots." The purpose of the comparison, obviously, is to see whether the information on the request form compares properly with the information on the certificate. If it does not, the board of elections, pursuant to both §§ -24 and -31 of 19:57 must reject the ballot, doing so without opening the inner envelope. The power of the board to reject when the information is not comparable is entirely clear.

The clerk argues that the board, under 19:57-24, is limited to comparing the information contained on the inner flap certificate with the request form. The information on the certificate consists only of the name, home address, municipality and signature of the absentee voter plus the signature of an assistant if the voter is "incapacitated." Thus, according to the clerk, the board of elections is not to consider any deficiencies in the request form which does not deal with matters referred to in the certificate. Even if that argument were correct, it is apparent that a procedure so limited would require the rejection of an absentee ballot when no reasons were provided on the request form. The certificate must contain the signature of any person who assists an incapacitated absentee voter. The fact of disability must be set forth on the request form as a reason for requesting an absentee ballot. Unless that reason is

checked, the board has no way of knowing whether the person providing assistance was required to sign the certificate or whether the voter was, in fact, disabled so that assistance was permitted.

The statutes, however, are not to be read so narrowly. The county clerk has no authority to reject ballots once they have been voted, only the authority to refuse to forward an absentee ballot before it is voted. Responsibility for the counting and the acceptance or rejection of absentee ballots resides in the board of elections, or in this court when the board cannot decide a ballot issue. This court should not be relied upon unless the board is unable to decide the issue by a majority vote. The fact that 19:57–24 requires the board to compare the ballot certificate with the ballot request must not be read as limiting the board's authority. It has the right, indeed, the obligation, to reject a ballot which should not have been forwarded to an absentee voter when his or her application was defective.

In the present case, the county clerk admits that the request form was not completed and that the ballot should not have been forwarded to the voter. There is no reason that his mistake should not be corrected by the board of elections.

*In re Keogh–Dwyer*, 85 *N.J.Super.* 188 (App.Div.1964), rev'd on other grds. 45 *N.J.* 117 (1965), is very much on point. In that case the court said:

> The reason for voting an absentee ballot is the basis of the right of the voter to receive such a ballot.... It is only by stating the reason and, in the event of disability, then by attaching the physician's certificate [no longer required], that the county board of elections can make the determination required to be made by it by *N.J.S.A.* 19:57–24 that the voter is legally entitled to vote. If the voter claims he is too ill to go to the polls, his failure to file a medical certificate with his ballot would be fatal, rendering his ballot a nullity. If the reason is not stated, how then, can it be determined whether a physician's certificate is required or not ...
>
> We therefore conclude the omission of these two voters to state the reason why they desired an absentee ballot is fatal, and consequently the action of the trial judge in rejecting the certificates was proper. [85 *N.J.Super.* at 204; citations omitted]

While *Keogh–Dwyer* did not consider the question of the county clerk's authority against that of the board of elections, it clearly approved the board's rejection of absentee ballots.

In *In re Petition of Byron*, 165 *N.J.Super.* 468 (Law Div. 1979), aff'd 170 *N.J.Super.* 410 (App.Div.1979), the board of elections rejected absentee ballots because of improprieties in the ballot delivery process. Both the Law and Appellate Division held that the rejection of 152 absentee ballots in one municipal election and 51 absentee ballots in another was proper. The specific issue of board authority was not raised. The Appellate Division noted, however: "Appellants' contention that the Burlington County Board of Elections was without authority and jurisdiction to reject the absentee ballots in dispute is without merit." 170 *N.J.Super.* at 411.

The county clerk would distinguish *Byron* on the ground that the serious concerns about fraud in that case are not present here. That distinction, however, is not available. If voters can obtain absentee ballots by submitting requests without reasons, every voter will be able to obtain absentee ballots. The possibilities of fraud are obvious.