LEONARD J. GRAMLICH, PLAINTIFF, v. LOUISE COTTRELL, ROBERT FAIRFIELD & MARY C. LENNIE, CLERK OF THE CITY OF SOMERS POINT, DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided July 10, 1985.

*Arlene Groch* for plaintiff.

*Vince Riccardi* for defendant (*Wilson & Scerni,* attorneys).

CONNOR, J.S.C.

This election contest brought pursuant to *N.J.S.A.* 19:29–1 *et seq.* seeks to invalidate 18 absentee ballots cast by residents of the Ocean Point Health Care Center, a nursing home in Somers Point. The basis for the challenge involves alleged violations of *N.J.S.A.* 19:57–23. The pertinent part of that statute reads as follows:

> An absentee voter shall be entitled to assistance from a family member in performing any of the actions above. An incapacitated absentee voter shall also be entitled to assistance from a person other than a family member in

performing any of such actions. The family member or other person providing such assistance shall certify that he did assist the voter and will maintain the secrecy of the vote by both printing and signing his name in the space provided on the certificate. In no event may a candidate for election provide such assistance, nor may any person, at the time of providing such assistance, campaign or electioneer on behalf of any candidate.

The basic issues boil down to two:

1. Is it a violation of *N.J.S.A.* 19:57–23 for a candidate for local office to provide assistance to an incapacitated absentee voter in voting for a different candidate—the one subject to the challenge?
2. If so does this violation require that any such ballot be invalidated?

For reasons which follow and which supplement a bench opinion, I conclude that both questions should be answered "yes".

The facts are essentially undisputed. Challenger Leonard Gramlich and challengee Robert Fairfield each sought nomination in the June 4, 1985 primary as Republican Committeeman for Ward 1 District 2 in the City of Somers Point. Gramlich received 55 machine ballots and 1 absentee for a total of 56. Fairfield received 42 machine ballots and 18 absentee ballots for a total of 60. Eighteen of the absentee ballots counted were cast by residents of the Ocean Point nursing home. (Two other ballots cast by the nursing home residents were rejected by the Board of Elections for procedural defects, were not counted and were not the subject of challenge.) The other absentee ballot was cast by Lisa Gramlich, daughter of challenger Leonard Gramlich, who herself was a candidate for Ward 1 District 2 Republican Committeewoman.

Charles Broomall, Jr. signed each of the certificates attached to the inner envelopes of the challenged ballots indicating that he provided assistance to the voters and as well indicating that he transported or mailed the ballots. Broomall is and was the Director of Recreation and Volunteer Services for Ocean Point. Broomall also was a candidate for 1st Ward City Council in Somers Point for the June 4, 1985 primary. Broomall ran as a "Regular Republican" as did challengee Fairfield.

Based upon the proofs presented, the exact "assistance" rendered by Broomall to each challenged voter cannot be confi-

dently determined. However, it is clear that Broomall played some role as to each of the challenged votes. As to some voters, he was the only person providing assistance. As to certain other voters, he, together with his assistant Mary Ellen Motto (a nursing home employee subordinate to Broomall), were involved in the balloting procedure. As to the remainder, Broomall together with Pamela Thompson (also a nursing home employee subordinate to Broomall) provided the "assistance." Their involvement in the balloting process first came to the court's attention during the testimony of Broomall. The "assistance" involved included writing the names of the committee candidates on the ballot (the names of committee candidates had to be written in); punching holes in the ballot card next to candidates' names (this was the method of selecting a candidate on these computer sorted absentee ballots); filling in information on the ballot certificate and transporting or mailing the ballots. Broomall denied that any electioneering took place during the assistance. No finding is made one way or the other on this issue, although it is suggested that the statistical likelihood of all 18 nursing home voters independently selecting the same candidate is minimal.

On Fairfield's behalf it was argued that the portion of *N.J.S.A.* 19:57–23 providing "In no event may a candidate for election provide ... assistance" does not apply to a situation where another candidate as opposed to the challenged candidate provides the assistance. This argument is easily disposed of. The Legislature's choice of words is significant. The words "a candidate" were chosen. These words should be given their logical broad meaning absent some countervailing reason.

Caselaw and legislative history reinforce the conclusion reached and demonstrate the absence of any countervailing reason. In *Petition of Byron*, 165 *N.J.Super.* 468 (Law Div. 1978), affirmed on the opinion below, 170 *N.J.Super.* 410 (App. Div.1979), Judge Haines dealt with judicial and legislative concerns regarding the absentee voting process:

> There is a close connection between the statutory ... requirements and legislative concerns about fraud and secrecy. Fraud, in particular, is difficult to prove. The purpose of our [absentee voting] statutes is to prevent fraud and preserve secrecy through strict procedural controls....
>
> In short, two of the vital concerns of the Legislature in enacting absentee voting legislation—preservation of the secrecy of the ballot and prevention of fraud-were placed in jeopardy by the procedure adopted in these cases. [*Id.* at 165 *N.J.Super.* 475, 476.]

*Petition of Battle,* 190 *N.J.Super.* 232 (App.Div.1983), affirmed as modified, 96 *N.J.* 63 (1984), recounts additional governmental concern regarding the integrity of the absentee voting process and some legislative history regarding the 1981 amendments to *N.J.S.A.* 19:57–23. As is evident from that opinion, there was a clear desire to increase government's ability to guarantee the integrity of absentee voting procedures. Of particular concern were those isolated from the rest of the community due to illness or infirmity. 190 *N.J.Super.* 232, 239.

Applying the principles and concerns discussed to the case at bar, it is evident that *N.J.S.A.* 19:57–23 should be construed so as to prevent any candidate from assisting an incapacitated absentee voter. The same concerns of fraud avoidance and preservation of ballot secrecy are here present. Judicial notice can be taken that political candidates often ally themselves with other candidates both formally and informally. It is only the rare politician who can effectively function in isolation. There would be the obvious motive of a given candidate to also seek to benefit a running mate or ally. Here both Broomall and the challengee Fairfield ran as "Regular Republicans."

Ballot secrecy was also impugned by the procedure here followed. For a majority of the absentee voters both Broomall and one of his subordinates either Motto or Thompson jointly provided "assistance." Neither Motto nor Thompson certified "that [s]he did assist the voter and will maintain the secrecy of the vote by both printing and signing [her] name in the space provided on the certificate" as required by *N.J.S.A.* 19:57–23.

One wonders why it is necessary for two able-bodied persons to provide assistance to an incapacitated absentee voter.

■ By reason of the conduct in question running afoul of both legislative concerns, the ballots should be invalidated. As was said in *Petition of Byron, supra,* 165 *N.J.Super.* at 476 "The importance of vindicating these interests outweighs any countervailing concern over the disenfranchisement of voters."

In this case the court can determine pursuant to *N.J.S.A.* 19:29–1(e) that sufficient illegal votes were received to change the result without questioning the voters or taking extrinsic evidence. Leonard Gramlich received one absentee vote; Robert Fairfield received 18. Lisa Gramlich is the daughter of Leonard Gramlich and was a co-candidate with him for the position of District Committeewoman. She voted absentee. Even making the unrealistic assumption that she did not vote for her father but rather voted for Fairfield, sufficient illegal votes were cast to change the result. If Gramlich's single absentee vote is subtracted from his total and 17 of the 18 absentee votes are deducted from Fairfield's total, the following results:

Gramlich     55
Fairfield     43

Accordingly, pursuant to *N.J.S.A.* 19:29–8 it is declared that Leonard Gramlich was duly elected and is entitled to a certificate of election.