ELIZABETH ZIETKO, PLAINTIFF-APPELLANT, v. NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued May 18, 1944—Decided October 6, 1944.

For the appellant, *Isadore Rabinowitz* and *Nathan Rabinowitz.*

For the respondent, *Kellogg & Chance* (*R. Robinson Chance,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. Briefly stated, the dispositive question in this cause is one of jurisdiction of the subject-matter. More specifically stated, the question for decision, is whether the Supreme Court, as is urged, or the Workmen's Compensation Bureau, as was held, had "exclusive original jurisdiction" (*R. S.* 34:15–49) to entertain and determine appellant's pleaded cause, instituted in the Supreme Court and based upon an asserted agreement allegedly made with respondent pursuant to *R. S.* 34:15–50.

The material facts which give rise to the posed question are free from dispute.

On November 16th, 1939, Walter S. Zietko, appellant's son, suffered a fatal accident (electrocution) which arose out of and in the course of his employment by Jacques Wolf & Co., a corporation, which held an effective standard workmen's compensation insurance policy of respondent insuring the employer, *inter alia,* against liability for the death of appellant's son.

Appellant and respondent endeavored "to settle upon and determine the compensation due" to appellant. *R. S.* 34:15–50. They voluntarily appeared at an informal hearing conducted by a referee in the Bureau who "proposed or recommended" that respondent pay appellant $2.28 a week for $300 weeks ($684), plus the costs of burial ($150), or a total of $834. Although it denied appellant's right to compensation, respondent accepted the proposal for recommendation of the referee in order, as it claims, to avoid costs of litigation. At all events, on or about December 29th, 1939, respondent executed what purports to be an agreement between it and appellant (designated as Form No. 4 by the Bureau) embracing the proposal or recommendation of the referee. Although appellant did not sign the agreement (she was advised by respondent that it was not necessary for her to sign at the time), although she did not cash the seven checks which respondent sent her between December 29th,

1939, and April 10th, 1940, although respondent thereafter stopped payment on those checks, nonetheless the pleaded agreement, with the typed notation thereon that appellant "refused to sign" it, was approved by the Bureau, on January 29th, 1940, on its designated Form No. 6. *R. S.* 34:15–50. Both the purported agreement and the stated approval thereof were filed with the Workmen's Compensation Bureau.

On April 8th, 1940, appellant filed a dependent's claim petition with the Department of Labor, Workmen's Compensation Bureau, against her son's employer (Jacques Wolf & Co.). Respondent was not made a party defendant in that cause. Appellant's claim petition was dismissed in the Bureau on February 16th, 1943, for failure to prosecute. The disposition of her appeal from that dismissal is still pending in the Bergen County Court of Common Pleas.

In this posture of her case in the Pleas, appellant caused a common law action to be instituted against respondent in the Supreme Court on November 30th, 1943. By her complaint she sought to recover from respondent the sum of $834, this being the amount which the referee in the Bureau had proposed or recommended that respondent pay her. Her asserted right to recovery is specifically rested upon the breach of the alleged agreement (Form No. 4) executed by respondent, and approved by the Bureau (*R. S.* 34:15–50).

Respondent denied liability. It would serve no purpose to detail the grounds of its denial. It should suffice to observe, generally stated, that by its answer it denied the existence of the alleged agreement between it and appellant because of the latter's refusal to sign that agreement; that appellant repudiated and terminated the alleged agreement, if such in fact existed, when she filed a claim petition against her son's employer, the propriety of the dismissal of which is still to be determined; and that the Supreme Court, therefore, lacked jurisdiction over the subject-matter. Respondent especially set down in its answer two objections and points of law, first, that the Supreme Court was without jurisdiction, and second, that the complaint failed to disclose a cause of action since it did not allege that appellant signed Form No. 4, or in any other manner contracted with respondent to accept the payments therein mentioned.

Appellant replied denying respondent's answer. Respondent then moved to and did bring up for determination its two objections and points of law which, as already observed, it had set down in its answer. After hearing the proofs (by affidavits) and contentions of the respective parties, Circuit Court Judge and Supreme Court Commissioner, J. Wallace Leyden, concluded that respondent's first point of law (lack of jurisdiction in the Supreme Court) was well taken because what appellant in fact claimed was compensation as a dependent of her son who suffered death as the result of a compensable accident, and because the "exclusive original jurisdiction" for such a claim resides in the commissioner, deputy commissioners, and referees. *R. S.* 34:15–49. He further held that the disposition which he thus made of the first point of law made it unnecessary for him to determine the second point. Accordingly, he struck the complaint and dismissed the action on the ground that the Supreme Court lacked jurisdiction over the subject-matter.

Judge Leyden correctly appraised and dismissed appellant's action. It is nothing more than juggling with words to say, as it is said, that appellant's action is not a "claim for compensation" but is simply a suit for "breach of an agreement, no more, no less." For, as was held, what appellant in fact sought to recover from respondent by her common law action in the Supreme Court was the lump sum equivalent ($834), however otherwise characterized, of the compensation ($834) which respondent had agreed to pay her in the amounts and in the manner proposed and recommended by the referee and approved by the Bureau. *R. S.* 34:15–50. The maintainability of such an action in the Supreme Court finds neither legislative nor judicial sanction.

1. *As to legislative sanction.* By chapter 95 of *Pamph. L.* 1911, *p.* 134, the legislature wrought a marked and historic departure from the then existing applicable common law principles in determining the liability of an employer for injuries suffered by an employee in the course of his employment. It established an elective schedule of compensation and regulated the procedure for the determination of liability and compensation thereunder. By the terms of this act, the legislature

created and has since continued two distinct procedural methods of determining the liability of an employer to his employee for injuries sustained by the latter as the result of an accident arising out of and in the course of his employment. They are set forth in the act under section I (Common law relationship), and section II (Elective compensation relationship). The right of an employee to sue his employer in a common law action remains unchanged in all cases contemplated by section I but was abolished in all cases contemplated by section II. Jurisdiction to determine cases under section II was vested in the Judge of the Court of Common Pleas of such county as would have jurisdiction in a civil case. He was authorized to hear and determine the dispute between the parties in a summary manner and his decision as to questions of fact was made conclusive and binding. The right of the Supreme Court to review questions of law by *certiorari* was preserved. Later (chapter 229, *Pamph. L.* 1921, *pp.* 731, 735) this right was broadened to include the review of facts. The act (1911, *supra*) was amended and supplemented in several respects, not here important, prior to 1918.

By chapter 149, section 3, *Pamph. L.* 1918, *pp.* 429, 430 (creating a Workmen's Compensation Bureau in the Department of Labor) "exclusive original jurisdiction" of all claims arising in all elective compensation cases was vested in the Commissioner of Labor, the deputy commissioners and referees appointed under the act. This act was adopted as a supplement to the act of 1911, *supra,* and was approved on February 28th, 1918. It became effective on July 4th, 1918, since it did not provide otherwise. *R. S.* 1:2–3. Section 3 of this act (1918) was carried into *R. S.* 34:15–49 word for word so far as is here pertinent. The amendment thereof (*Pamph. L.* 1941, *ch.* 194, *p.* 584, § 1) made no change except to fix the compensation of deputy commissioners.

The words employed in *R. S.* 34:15–49 do not relate to terms of art. In plain and simple language the legislature vested "exclusive original jurisdiction" under section II of the act in the Commissioner of Labor, deputy commissioners and referees appointed pursuant to *R. S.* 34:1–57. That

language is just as clear and unambiguous as it is plain and simple. Under such circumstances, the elementary rule is that there is no reason or occasion for judicial construction. For the words are presumed to evince or express the legislative intent. *Cf. Schulz* v. *State Board of Education,* 131 *N. J. L.* 350, and cases collated at *pp.* 354, 355; 36 *Atl. Rep.* (*2d*) 907. The jurisdiction resides where the legislature placed it.

2. *As to judicial sanction.* There is no merit to the suggestion that since common law actions were maintained prior to the creation of the Bureau when the Courts of Common Pleas had jurisdiction over compensation cases, such jurisdiction was not lost by transferring the same exclusive jurisdiction to the Bureau. That suggestion is principally based upon the holding of this court in the case of *Holzapfel* v. *Hoboken Manufacturers Railroad Co.,* 92 *N. J. L.* 193; 104 *Atl. Rep.* 209, and several other cases based thereon. None is in point.

The Holzapfel case was decided (June 17th, 1918) prior to the effective date of the act of 1918, *supra,* now *R. S.* 34:15–49. Hence the observation there made, that the Court of Common Pleas, then the tribunal for the trial of workmen's compensation cases, was not the only court vested with jurisdiction to enforce approval of agreements under the act calling for full compensation, is not controlling in the circumstances of the case at hand. For the subsequent legislative change (*R. S.* 34:15–19) is to the contrary. That change placed the "exclusive original jurisdiction" of cases under the second section of the act in the Bureau.

Nor is there any intimation in any of the other cases cited that the "exclusive original jurisdiction" in the circumstances exhibited in the case at hand resides elsewhere other than in the Bureau, the Commissioner of Labor, his deputy commissioners and referees. In the words of the Chief Justice for this court in the case of *Butler* v. *Eberstadt,* 113 *N. J. L.* 569, 573; 175 *Atl. Rep.* 159, "There is no dual jurisdiction in the Bureau and a common law court to award compensation to employees who come within the provisions of section 2 of the statute."

3. *As to the constitutionality of R. S.* 34:15–49. This provision does not unconstitutionally deprive the Supreme Court of its inherent power to exercise original jurisdiction in all civil actions at law. The Workmen's Compensation Act, as we recently had occasion to point out, does not impose "workmen's compensation" upon employer and employee "against their will." Both are free to base the contract of hiring either on section I or section II of the act. If, however, they do not make such a choice, the legislative presumption is that they have accepted the elective compensation provision (section II) and have agreed to be bound by it. *R. S.* 34:15–9. *Micieli* v. *Erie Railroad Co.*, 130 *N. J. L.* 448, 456; 33 *Atl. Rep.* (2d) 586; *affirmed,* 131 *N. J. L.* 427, 429; 37 *Atl. Rep.* (2d) 123. In other words, no legislative "coercion" is exercised upon either party to the contract of hiring. It is altogether "optional" with them whether they will stand on the first or second section of the act. When as here, appellant's son concededly came under the second section of the act, appellant cannot be heard to complain. None of her constitutional rights has been invaded. *Cf. Sexton* v. *Newark District Telegraph Co.*, 84 *N. J. L.* 85; 86 *Atl.* *Rep.* 451; *affirmed,* 86 *N. J. L.* 701; 91 *Atl. Rep.* 1070. She may yet, under proper circumstances, invoke the jurisdiction of the Supreme Court to review questions of law and fact by *certiorari. R. S.* 34:15–66.

This disposition of the cause makes unnecessary further discussion of the other points argued.

Judgment is affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, Dill, JJ. 16.

*For reversal*—None.