43 N.J. Super. 492 (1957)
129 A.2d 38
ELEANOR DeFLESCO AND LEON M. SCHLICHER, PETITIONERS-CROSS-APPELLANTS,
v.
MERCER COUNTY BOARD OF ELECTIONS, DEFENDANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1957.
Decided January 30, 1957.
*494 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Walter D. VanRiper argued the cause for petitioners-cross-appellants (Mr. Richard J.S. Barlow, Jr., attorney).
Mr. Nathan N. Schildkraut argued the cause for defendants-cross-respondents (Messrs. Kahn & Schildkraut, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
Not too many words are needed to explain the factual subject matter of the present appeal and cross-appeal.
At the general election conducted on November 6, 1956, a candidate for the office of Committeeman of the Township of Ewing, Mercer County, was initially announced to have been chosen by a majority of three votes. A recount of the ballots increased the margin of his majority from three to four votes.
Strangely, in the light of subsequent events, a certificate of election was issued to him on November 19, 1956 signed by the chairman of the board of county canvassers, attested by the county clerk, declaring that he was duly elected a member of the township committee in and for the Township of Ewing. The petition that originated the proceeding that we are requested to review was filed on November 13, 1956.
It was made evident that several military service and civilian absentee ballots designated to be cast in the County of Mercer pursuant to N.J.S.A. 19:57 were not received by the Mercer County Board of Elections until after November 6, 1956, the date of the election. Authentic information revealed that a total of 474 absentee ballots out of those which had been mailed to applicants had not been received by the county board and voted at the election, of which 25 had been transmitted to applicants who were qualified voters in the Township of Ewing. The envelopes purporting to *495 contain the absentee ballots received by the county board of elections after November 6, 1956 have been unopened and impounded, and thus the identity of the absentee and his voting district remain unknown.
Two of the four members of the county board of elections addressed the petition to which reference has been made to the Mercer County Court containing the information that the members of the board were equally divided in their convictions concerning the legal propriety of counting absentee ballots received by the board subsequent to the closing of the polls on election day.
After consideration of the factual circumstances and the pertinent terms of the statute, the County Court made an order the controversial portion of which reads as follows:
"It is ordered on this 5th day of December, 1956, that said absentee ballots referred to above, which bear a post mark of November 5, 1956 or prior thereto, be opened and counted by the Mercer County Board of Elections on the 19th day of December, 1956, and that the results of such count be added to the figures presently certified to by the Board of County Canvassers for Mercer County."
The enforcement of the order has been temporarily restrained to await the determination of the present appeals, both of which impugn the legality of the court's order.
While the jurisdiction of the County Court to have made the order, evidently under N.J.S.A. 19:57-24, is besieged by the appeal, yet the question of public interest projected by counsel in the prosecution of these appeals implicates predominantly the statutory authority in our State of the county boards of elections to count military absentee and civilian absentee ballots which are not received by the board prior to the time designated for the closing of the polls at such election. We shall therefore accord primary attention to that question.
The opportunity of an absentee to cast his vote at a public election by mail has the characteristics of a privilege rather than of a right. Even the recognized right of every voter personally to express his will at the polls is not an absolute but a conditional right dependent upon many circumstances, *496 some of which are not within the control of the voter. Vide, Clark v. Quick, 377 Ill. 424, 36 N.E.2d 563 (Sup. Ct. 1941). When, where, and how the voting is to take place are matters prescribed and governed by the will of the Legislature. Ransom v. Black, 54 N.J.L. 446, 448 (Sup. Ct. 1892).
The bestowal by law of the absentee voting privilege upon those engaged in the military service in time of war became somewhat widespread in our country as long ago as the Civil War, since which time under the stimulation of succeeding wars the methods of its exercise have progressively undergone legislative renovations. In general, see Annotations, 14 A.L.R. 1256; 19 A.L.R. 308; 35 A.L.R. 819; 121 A.L.R. 939; 132 A.L.R. 374; 140 A.L.R. 1100; 147 A.L.R. 1443; 18 Am. Jur. 325, § 214; 29 C.J.S., Elections, § 210, p. 297; 8 Wash. & Lee L.R. 36 (1951); 42 Columbia L.R. 304 (1942); 8 U. of Chicago L.R. 563 (1941).
The preservation of the enfranchisement of qualified voters and of the secrecy of the ballot, the prevention of fraud, and the achievement of a reasonably prompt determination of the result of the election have been the vital considerations in the development of the absentee voting legislation.
Moreover the availability of the privilege has been modernly enlarged to encircle its use in periods of peace, and also by specifically qualified civilians. Vide, 32 Am. Pol. Science Rev. 898 (1938). It is said that the absentee voting privilege was first accorded to civilians by the legislature of Vermont in 1896. 1 Encyc. Britannica 63. The validity of such legislation has encountered a conflict of opinion where the legislative power to enact it has not been specifically conferred by the state constitution. See, for examples of the absence, N.J. Const. (1844), Art. II, par. 1, as amended effective 1875; N.J. Const. (1947), Art. II, par. 4. See, also, minutes of Constitutional Convention of 1947, referred to in the statement accompanying the introduction of L. 1953, c. 211. R.S. Cum. Supp. 1953, 1954, p. 918.
Our present inquiry pertains to the time limitation within which an absentee ballot must be received by the county *497 board of elections under our applicable statute to entitle it to be counted at the election as a valid ballot. It is informational to glance at the previous course of our legislation formerly expressive of that boundary. In quest of legislative intention, the history of the statutory evolution is often enlightening. Changes generate the implication of purposeful alterations. Illuminative statutes of our State relative to the present subject are L. 1898, c. 139, sec. 220; L. 1918, c. 150, sec. 10; L. 1920, c. 349, sec. 31; L. 1930, c. 187, pp. 909, et seq.; L. 1942, c. 18, sec. 10; L. 1944, c. 9, sec. 18; L. 1945, c. 11, sec. 23; L. 1948, c. 1, sec. 22; L. 1949, c. 54, sec. 15; L. 1953, c. 211, sec. 24 and 26 (N.J.S.A. 19:57).
An inspection of the progression of the enactments above cited reveals, summarily expressed, that by the statute of 1898 the absentee exercised his privilege by means of a duly executed and attested proxy delivery to the district board of elections between the opening and closing of the polls. By the statute of 1918 the absentee ballots were returned to the Secretary of State, who distributed them to the appropriate county boards of election, which bodies opened the envelopes, counted and canvassed the ballots at a meeting held not more than 30 days subsequent to the election. In 1920-1930 the county boards were required to count the absentee ballots not later than the fourth Tuesday following the election.
In 1942 came the requirement that "all ballots received by the county boards prior to the time designated for the closing of the polls for any election hereunder shall be counted." In 1944 the mandate originated that "on the day of such election each county board of elections * * * shall then proceed to count and canvass the [absentee] votes * * *." Significantly, that essentiality has expression in the subsequent enactments of 1945, 1948, and 1949.
With an awareness of the foregoing legislative ancestry it is not difficult to recognize and understand the hereditary features of our "Absentee Voting Law" (1953) of present applicability. Attention falls particularly on sections 24, 26, and 31 of the act. Section 31 ordains that "On the day *498 of each election each county board of elections shall open * * * the inner envelopes in which the absentee ballots, returned to it, to be voted in such election, are contained * * * and shall then proceed to count and canvass the votes cast on such absentee ballots * * *. Immediately after the canvass is completed, the respective county boards of election shall certify the result of such canvass * * *." (Italics supplied)
Congenial to section 31 is section 26 which provides that "All valid military service ballots and valid civilian absentee ballots received by the county boards prior to the time designated for the closing of the polls for each election shall be counted." (Italics supplied)
Assuredly some definite limitation of time within which the absentee ballot must be received by the stated election officials is not only an essential but pragmatically an imperative provision in any statutory absentee voting system. Indeed, one of the absentee ballots the validity of which is here debated was not received by the county board until November 19, 1956. In our statute the Legislature has definitely prescribed that those absentee ballots received by the county boards of elections before the closing of the polls at the election are the ones entitled to be counted and canvassed. Expressio unius est exclusio alterius.
We are importuned by the petitioners-appellants to resort to a judicial interpretation or construction of our statute liberally sufficient to authorize the counting and canvassing of all or some of the belatedly received ballots. Cf. Richardson v. Radics, 131 N.J.L. 406 (Sup. Ct. 1944). We are not unaware of the judicial tendency in election cases to discard merely technical irregularities, but it must be realized that liberal judicial interpretation or construction of a statute has its limitations.
Where the wording of a statute is clear and explicit, judicial interpretation other than that called for by the language expressed therein is not permissible. Zietko v. N.J. Manufacturers Casualty Ins. Co., 132 N.J.L. 206, 211 (E. & A. 1944); Bass v. Allen Home Improvement Co., *499 8 N.J. 219, 226 (1951); Lynch v. Borough of Edgewater, 8 N.J. 279, 286 (1951); Sperry and Hutchinson Co. v. Margetts, 15 N.J. 203, 209 (1954); Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955).
And it is equally axiomatic that the statutory language under consideration is to be construed with the context of the entire enactment, its obvious purposes and the reasonable occasion for the words employed to which the generally accepted meaning and implications are to be ascribed unless a contrary intent is clear. State v. McCall, 14 N.J. 538, 545 (1954); Abbotts Dairies v. Armstrong, 14 N.J. 319, 325 (1954); Julius Roehrs Co. v. Division of Tax Appeals, 16 N.J. 493, 497 (1954); Jamouneau v. Harner, 16 N.J. 500, 513 (1954).
A study in general of the subject of absentee voting legislation exhibits the reasons for requiring the absentee voter to commit to the United States mails the delivery of his ballot to the proper election officials, but we are unable to discern in our present statute any legislative intent to constitute the time of mailing, postmarked on the envelope, as the determinative of the lawful propriety of the counting and canvassing of the enclosed ballot.
The provisions of the statute relative to the "mailing" and to the "return" and "receiving" of the ballot appear to be distinguishable components. Compare section 23 with sections 24 and 31. The former measurably directory, the latter authoritative and mandatory. Then, too, there is the presumption that a word or phrase is used in the same sense throughout the statute. Ross v. Miller, 115 N.J.L. 61 (Sup. Ct. 1935); Lewis' Sutherland, Statutory Construction, § 399.
Just as it has always been deemed necessary to designate a time for the closing of the polls to resident voters, so likewise is it expedient and practicable also to fix the time of the closing of the polls to the absentee voters. The obligation of both the resident voter and the absentee voter is to deliver his ballot to the proper election officials within the *500 prescribed time, in the former case in person, and in the latter by mail.
Our research has disclosed that the comparable statutes of other states, certainly in excess of forty, designate time limits within which the absentee ballot must be received by the election officials in order to be counted, and the usual requirement in modern legislation is that the ballot be received on or before the day of the election. See recent opinion of public interest rendered by the Supreme Court of Rhode Island in Roberts v. Board of Elections, 129 A.2d 330 (1957).
Furthermore, it appears to have been conceded by counsel in this proceeding that the county boards of elections throughout the State have pursuant to their practical interpretation of the terms of the statute, declined in the last few years to count and canvass absentee ballots received by them after the closing of the polls. The Legislature may be deemed to be conversant with the prevailing practice.
Our conclusions are that the Mercer County Board of Elections should not count and canvass the absentee ballots which were not received by it prior to the time designated for the closing of the polls at the election on November 6, 1956, and that the order of the Mercer County Court under review be reversed, without costs to either party.