879 A.2d 1174 (2005)
379 N.J. Super. 461
In the Matter of the Application of the OCEAN COUNTY COMMISSIONER OF REGISTRATION FOR A RECHECK OF THE VOTING MACHINES FOR THE MAY 11, 2004, MUNICIPAL ELECTIONS in the Township of Long Beach and Manchester and the Borough of Island Heights.
Peter L. Murphy, Plaintiff-Appellant,
v.
Ocean County Board of Elections, Ocean County Clerk, Township of Long Beach and Ralph Bayard, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2005.
Decided August 5, 2005.
*1175 Joseph D. Coronato, Toms River, argued the cause for appellant (Mulvaney, Coronato & Brady, attorneys; Mr. Coronato, on the brief).
Judith Andrejko, Deputy Attorney General, argued the cause for respondent Ocean County Board of Elections (Peter C. Harvey, Attorney General, attorney, Patrick Dealmeida, Assistant Attorney General, of counsel; Ms. Andrejko, on the brief).
Laura M. Benson argued the cause for respondent Ocean County Clerk (Berry, Sahradnik, Kotzas, Riordan & Benson, attorneys; Mr. Benson, on the brief).
Edmund F. Fitterer, Jr., Ship Bottom, argued the cause for respondent Township of Long Beach (Shackleton & Hazeltine, attorneys; Richard J. Shackleton, on the brief).
Richard A. Grossman, Brick, argued the cause for respondent Ralph Bayard (Grossman, Kruttschnitt, Heavey & Jacob, attorneys; Mr. Grossman, on the brief).
Before Judges STERN, WECKER and S.L. REISNER.
The opinion of the court was delivered by
WECKER, J.A.D.
These consolidated appeals arise out of a May 11, 2004 municipal election in the Township of Long Beach, in Ocean County. Plaintiff, Peter L. Murphy, was an unsuccessful candidate in that election, having lost the position he sought by one vote. In A-5899, we affirm the order permitting a recheck of the voting machines at the request of the State, and in A-5900, we affirm the summary judgment dismissing plaintiff's complaint.

I.
These are the relevant facts apparent from the record. The ballot contained the names of six candidates for three positions on the Township Board of Commissioners. The sample ballot shows that six printed names appeared, as well as three spaces for potential write-in votes. The three incumbents, Peter L. Murphy, Dianne C. Gove, and Joseph H. Mancini, ran as a slate. Each was listed on a separate line under Column D, with the caption "The Leadership Team You Can Trust" under each name. The three challengers were separately listed. Ralph H. Bayard was listed under Column A with the caption "People's Choice for a New Voice"; Robert A. Palmer was listed under Column B; and William W. Buckley was listed under Column C with the caption "Fair and Equal Treatment for Residents." The fifth column on the ballot was labeled "Personal Choice," and provided three lines for write-in votes.[1]
*1176 Immediately upon the close of the polls at 8 p.m., the 1,134 machine ballots and the thirty-three absentee ballots that had been received by that time were tallied. At that point, the tally for each of the six candidates in the ballot stood as follows:[2]
 Robert A. Palmer 672
 DiAnne C. Gove 550
 Ralph H. Bayard 518
 Peter L. Murphy 518
 William W. Buckley 484
 Joseph H. Mancini 376
A total of five write-in votes also had been cast: three for Tice Ryan, one for Jeff Seddon, and one for Peter L. Murphy. The write-in vote for Murphy was rejected on the basis of N.J.S.A. 19:49-5 because his name appeared as a candidate on the printed machine ballot.[3] Thus prior to counting any of the provisional ballots, plaintiff was tied with defendant Ralph Bayard for the third Commissioner position.
Seven provisional ballots also were cast.[4] Six were subsequently counted; one was rejected on the ground that the provisional voter had recently moved to Stafford Township and was no longer a resident entitled to vote in Long Beach Township. When the six valid provisional ballots were counted on May 17, and all additional votes for any candidate were tallied, Bayard received two additional votes and Murphy received one. The totals for the six candidates whose names appeared on the ballot were recertified as follows:

 Robert A. Palmer 677
 DiAnne C. Gove 552
 Ralph H. Bayard 520
 Peter Murphy 519
 William W. Buckley 485
 Joseph H. Mancini 377[5]
Bayard, having then received one vote more than Murphy, was promptly sworn in as a Commissioner, along with the first two successful candidates, Palmer and Gove.
Three additional absentee ballots, each of which was postmarked prior to May 11, were not received until May 12. They were rejected and never opened because they were not received by the close of the polling place on May 11, as required by N.J.S.A. 19:57-23; 19:57-26.[6]

*1177 II.
On this appeal from both Law Division orders, plaintiff presents these arguments:
POINT ONE:
THE PLAINTIFF WAS STATUTORILY ENTITLED TO A RECOUNT OF THE VOTES.
POINT TWO:
THE FACT THAT THE ELECTION RESULTS WERE SUBJECTED TO A "RECHECK" BY THE STATE ATTORNEY GENERAL'S OFFICE DOES NOT AFFECT THE PLAINTIFF'S RIGHT TO A RECOUNT.
POINT THREE:
THE WRITE-IN VOTE FOR THE PLAINTIFF SHOULD HAVE BEEN COUNTED.
POINT FOUR:
THE PLAINTIFF IS ENTITLED TO HAVE ALL ABSENTEE BALLOTS COUNTED WHICH WERE RECEIVED BY MAIL BY THE DATE OF THE ELECTION.
POINT FIVE:
THE PLAINTIFF IS ENTITLED TO DISCOVERY AND A DETERMINATION AS TO THE PROPRIETY OF THE ACCEPTANCE OF SIX OF THE SEVEN PROVISIONAL BALLOTS CAST, AND THE EJECTION [sic] OF THE ONE PROVISIONAL BALLOT.
POINT SIX:
THE PLAINTIFF IS ENTITLED TO DISCOVERY PRIOR TO THE COURT'S CONSIDERATION OF ANY MOTION FOR SUMMARY JUDGMENT.
POINT SEVEN:
SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED TO THE DEFENDANTS IN THIS CASE BECAUSE THE PROCEDURES OF THE SUMMARY JUDGMENT RULE WERE NOT PROPERLY FOLLOWED.
We have thoroughly considered the briefs and arguments of counsel in light of applicable law, and we affirm.

III.
In A-5898, plaintiff challenges the order granting the Attorney General's request for a "recheck" of the voting machines used in the Long Beach Township municipal election. Specifically, plaintiff contends that rechecking cleared the results of the municipal election and deprived him of his statutory right to a recount under N.J.S.A. 19:28-1.[7] While the recheck ordered by the court at the Attorney General's request did clear the machines, literally preventing further confirmation of the municipal clerk's certified tally, that action did not deprive Murphy of his right to a recount. He had notice of the Attorney General's application and failed to object. He cannot, then, on that ground complain of the consequences.
The State sought judicial authority to clear and recheck the operation of the voting machines before the expiration of the fifteen-day period when voting machines are to remain locked, unless otherwise ordered by the court. See N.J.S.A. 19:52-6. The State sought relief from that *1178 fifteen-day waiting period in order to have the machines ready for the statewide June 8, 2004 primary.
The record establishes that Murphy received written notice of the Attorney General's application by certified mail on May 12, two days before the May 14 return date of the Attorney General's Order to Show Cause.[8] Murphy submitted no written objection to the State's application, nor did he appear in court on May 14 to object.[9] On May 14, Judge Donald F. Campbell signed an order permitting the recheck to take place on May 17; Murphy, however, did not receive a copy of the May 14 order until May 18.
On May 21, Murphy filed a verified complaint, apparently pursuant to N.J.S.A. 19:29-2, along with a proposed Order to Show Cause, seeking a recount and an order setting aside the election. Judge Marlene Lynch Ford signed the Order to Show Cause, returnable June 11. Defendants filed summary judgment motions on June 7 and June 9, just days before the scheduled return date. Those motions were heard on June 18.[10]
Plaintiff disputes the Attorney General's statutory authority for the recheck, citing N.J.S.A. 19:28-1, which explicitly provides for a "recount" either at the request of a candidate or, with respect to a public question, on petition by ten voters. We do not read that statute to relate to the State's right to confirm that voting machines are operating properly, much less to prohibit the "recheck" at the State's request, as occurred here.
Although the State's recheck did clear the municipal election results from the machines, paper tapes of each voting machine's results were preserved and available for inspection. Significantly, Murphy does not dispute defendants' contention that he never sought to inspect those tapes. In any event, we are satisfied that plaintiff has not been prejudiced thereby.

IV.
A challenger has the burden of proving that one or more legal votes were rejected, and that the number of improperly rejected votes was sufficient to change the result of the election. The challenger is not required to prove that the rejected votes were cast for him or her. In re Application of Moffat, 142 N.J.Super. 217, 224, 361 A.2d 74 (App.Div.), certif. denied sub nom. Princeton Tp. v. Bleiman, 71 N.J. 527, 366 A.2d 682 (1976); Kirk v. French, 324 N.J.Super. 548, 736 A.2d 546 (Law Div.1998).
Plaintiff argues that three absentee ballots that were not delivered until May 12, but were postmarked before the May 11 election, should have been counted. N.J.S.A. 19:57-23 provides, in pertinent part, that an absentee ballot "must be received by [the county] board [of elections] or its designee before the time designated by R.S. 19:15-2 or R.S. 19:23-40 *1179 for the closing of the polls, as may be appropriate on the day of an election." The polls in Long Beach Township remained open until 8 p.m., as required by N.J.S.A. 19:15-2 for a general election.
Plaintiff's argument is two-fold. First, plaintiff suggests that as long as an absentee ballot is postmarked before election day, it should be counted. The statute, however, explicitly provides otherwise, and we rejected that argument in DeFlesco v. Mercer County Bd. of Elections, 43 N.J.Super. 492, 129 A.2d 38 (App.Div. 1957). There we held that such a ballot could not be counted. "The preservation of the enfranchisement of qualified voters and of the secrecy of the ballot, the prevention of fraud, and the achievement of a reasonably prompt determination of the result of the election have been the vital considerations in the development of the absentee voting legislation." See also Mulcahy v. Bergen County Bd. of Elections, 156 N.J.Super. 429, 433-34, 383 A.2d 1214 (Law Div.1978) (applying and quoting DeFlesco, supra, 43 N.J.Super. at 495-96, 129 A.2d 38). In Mulcahy, Judge Petrella upheld the board's rejection of absentee ballots received after the date of the election, despite some evidence that unusual weather may have delayed mail delivery on election day. "The postmark date is not and cannot be controlling; the received date is and must be conclusive to avoid fraud and provide some finality to the closing of the polls." Id. at 434, 383 A.2d 1214. The judge further emphasized the anti-fraud rationale underlying the statute:
The court has no authority or discretion to adjust the time requirement. To do so would undermine the legislative intent and pave the path for future abuses. There have been many changes in the postal system in recent years which the court could well take judicial notice of, including the private use of postage meters, a mechanism which could easily subject the absentee voting procedure to abuse if the postmark date was determinative.

[Id. at 435, 383 A.2d 1214 (emphasis added).]
A clear purpose of strict adherence to the statutory cut-off for counting absentee ballots, as with other rules for accepting absentee ballots, is to deter fraud and maintain "the integrity of the elective process." See Application of Langbaum, 201 N.J.Super. 484, 490, 493 A.2d 580 (App.Div.1985). Without a cut-off date, the counting process might go on indefinitely.
We have found only one exception to the literal application of the "received by" requirement of N.J.S.A. 19:57-23. See In re Holmes, 346 N.J.Super. 372, 788 A.2d 291 (App.Div.2002). There the issue arose in a truly exceptional circumstance: the shutdown of the Hamilton Post Office in Mercer County as a result of anthrax contamination discovered shortly after the 9/11 terrorist attack on the World Trade Center. Nineteen absentee ballots that were postmarked before the November 6, 2001 election were not received by the Board of Elections until November 7.[11] We allowed those ballots received on November 7 to be counted, noting the "extraordinary circumstance of national dimension and unforeseen consequence":
We do not believe that the Legislature intended N.J.S.A. 19:57-23 to be applied in a manner that would prevent otherwise valid absentee ballots from being counted when, in the absence of voter fraud or malconduct, it has been conclusively demonstrated that such absentee ballots would have been timely delivered but for the extraordinary and unpredictable circumstances experienced in this case.

*1180 [Id. at 377-78, 788 A.2d 291 (emphasis added).]
Nonetheless, in balancing the competing policies underlying the election laws  protecting a citizen's right to vote while deterring fraud and promoting certainty in the electoral process  we disallowed three ballots received on November 8 and eleven ballots received between November 9 and November 21, despite all having been postmarked before the November 6 election.
The statute  N.J.S.A. 19:57-23  is clear on its face; its rationale is plain, and the means adopted to secure its purpose as reasonable. The fact that other methods, deadlines, or rules arguably could have been enacted to address the same concerns or to accomplish the same purpose is not a proper consideration for this court.
Plaintiff's secondary argument with respect to the absentee ballots is that one or more actually may have been delivered to the Ocean County Board of Elections before the polls closed at 8 p.m., but "sat on someone's desk." That argument is nothing more than unsupported speculation on plaintiff's part, and does not merit further discussion.

V.
Plaintiff contends that the rejection of one provisional ballot calls into question the validity of the election results. We fail to see any basis for that contention. Included in the Township's Statement of Undisputed Facts, submitted in support of its summary judgment motion, is the fact that the rejected provisional vote was cast by a person who had moved to Stafford Township and was no longer a resident of Long Beach Township on election day. Murphy did not respond to or challenge that Statement of Fact, which is therefore deemed established. See R. 4:46-2(b). Plaintiff's request for discovery respecting the procedure by which the provisional ballots were considered, including the six that were counted, likewise appears to be without basis.

VI.
Murphy's contentions, raised in Point III of his brief, warrant further discussion. Murphy contends that the one write-in vote cast for him was improperly declared void and not counted.
Where voting machines are used in an election, write-in ballots are subject to N.J.S.A. 19:49-5, which provides:
Ballots voted for any person whose name does not appear on the machine as a nominated candidate for office are herein referred to as irregular ballots.[[12]] Such irregular ballot shall be written or affixed in or upon the receptacle or device provided on the machine for that purpose. No irregular ballot shall be voted for any person for any office whose name appears on the machine as a nominated candidate for that office... any irregular ballot so voted shall not be counted.

[Emphasis added].
That unambiguous statutory direction is consistent with the rule applicable to write-in votes where paper ballots are used, N.J.S.A. 19:15-28; it is, however, more explicit in directing that such improperly cast write-in votes not be counted.[13]
*1181 Murphy argues that neither the instructions on the sample ballots mailed to registered voters, nor the instructions on the voting machines themselves, sufficiently warn voters not to write-in the name of a candidate whose name appears on the printed ballot. The Long Beach Township ballot for the May 11, 2004 election included this general notice with respect to write-in votes:
"WARNING! An improperly cast write-in vote will be deemed void. Be sure that your write-in vote is cast in the PERSONAL CHOICE column on the same line as the office for which you are casting the write in vote."
The ballot itself (and the sample ballot mailed to voters in advance) clearly explained how to enter a write-in vote. But it did not warn that a write-in vote for a candidate whose name appears on the printed ballot would be an "improperly cast" vote that would be "deemed void" and not counted.
We first note that the obvious purpose of N.J.S.A. 19:49-5 is to prevent a voter from casting two votes for the same candidate  once by marking the printed name and a second time by writing in the same name. We also note that the voter who improperly wrote in Murphy's name on the ballot  just like every person  is charged with knowledge of the law; N.J.S.A. 19:49-5 clearly and unambiguously invalidates the write-in vote for Murphy in these circumstances. Even in the context of the Criminal Code, where violations incur far more severe consequences, we hold persons to knowledge of behaviors prohibited by the Code, without requiring a copy of the Code to be provided to each person.
Neither of those considerations, however, negates the strong public policy in favor of protecting every citizen's right to vote, and to have his or her vote counted. Little is more basic to the concept of a democracy.
A citizen's constitutional right to vote for the candidate of his or her choice necessarily includes the corollary right to have that vote counted at full value without dilution or discount. That principle also encompasses "the right of all qualified electors to vote for [a write-in candidate] by such means." To preserve those rights, our state election laws are designed to deter fraud, safeguard the secrecy of the ballot, and prevent disenfranchisement of qualified voters. In furtherance of those goals, we have held that it is our duty to construe elections laws liberally.
[In re Petition of Gray-Sadler, 164 N.J. 468, 474-75, 753 A.2d 1101 (2000) (internal citations and quotation marks omitted) (emphasis added).].
Legislative findings and declarations recently set forth describe "a consensus that the nation's electoral system needs improvements to ensure that every eligible voter has the opportunity to vote, that every vote will be counted that should be counted, and that no legal vote will be canceled by a fraudulent vote." N.J.S.A. 19:61-1b (enacted by L. 2004, c. 88, § 1 as part of the Voting Opportunity and Technology Enforcement Act, N.J.S.A. 19:61-1 to -8, adopted in accordance with the federal "Help America Vote Act of 2002," Pub.L. 107-252, 42 U.S.C.A. § 15481.1).
In Gray-Sadler, the problem arose from a combination of confusing instructions and an awkward mechanism for casting a write-in vote. See Gray-Sadler, supra, 164 N.J. at 472, 753 A.2d 1101. Numerous write-in votes for three challengers, enough to change the result, were placed *1182 on the wrong lines on the ballot and were rejected on that ground pursuant to the last sentence of N.J.S.A. 19:49-5 ("An irregular ballot must be cast in its appropriate place on the machine, or it shall be void and not counted."). The Court ordered a new municipal election, largely because the polling place did not provide the instructions with respect to write-in voting, or a model voting machine as required by N.J.S.A. 19:50-3. Gray-Sadler, supra, 164 N.J. at 478-79, 753 A.2d 1101.
The facts in Gray-Sadler, however, are significantly different from those before us. The first significant difference is that the three challengers in that case were write-in candidates whose names did not appear on the printed ballot, and who had campaigned vigorously against the incumbents for mayor and for two council positions. The only names that appeared on the printed voting machine ballot were the incumbents in each office. Thus the second sentence of N.J.S.A. 19:49-5, the sentence that controls here, was not implicated in Gray-Sadler.
Because the write-in candidates' names were not on the ballot in that case, there was no risk that counting a write-in vote would result in double-counting any one voter's vote. And that is the precise risk implicitly addressed by N.J.S.A. 19:49-5 and explicitly addressed by N.J.S.A. 19:53A-3(f), which provides that the statutory requirements for "[e]very electronic voting system, consisting of a voting device in combination with automatic tabulating equipment, ... shall [be designed to] ... [p]revent the voter from voting for the same person more than once for the same office."
The Court in Gray-Sadler distinguished between voter carelessness and circumstances beyond the voter's control.
"We do not believe that the Legislature intended N.J.S.A. 19:49-5 to be applied in a manner that would frustrate the free expression of the voters' will when the incorrect placement of the write-in vote is the result of mistakes or problems beyond the voters' control."
[Gray-Sadler, supra, 164 N.J. at 477, 753 A.2d 1101.]
Here there was no problem "beyond the voter['s] control." Referring to "cases involving invalidated write-in votes," the Court cited a judicial history of "distinguish[ing] errors due to extrinsic problems from errors caused by a voter's own neglect." Id. at 476, 753 A.2d 1101. The principle the Court derived from the cases cited was "that rigid application of technical rules should not prevent otherwise valid write-in votes from being counted." Id. at 477, 753 A.2d 1101 (emphasis added) (citing Riecker v. Hartmann, 130 N.J.Super. 266, 272, 326 A.2d 101 (Law Div.1974) (write-in votes on Democratic primary ballot for individuals whose names appeared only on the Republican primary ballot were properly counted and were effective to secure the Democratic party nomination.))
It is not too much to expect that a voter would notice that his candidate's name appears as a choice on the ballot and that there is a clearly prescribed place on the ballot for expressing that choice. This is particularly so in light of the sample ballot that demonstrates, in advance, the names of the candidates as they will appear on the voting machine. Given those facts, and recognizing that we cannot know for certain whether the same voter also cast a proper vote for Murphy and if so, whether it was counted,[14] we see no basis *1183 for undoing the certification of the election results and ordering a run-off election.
The Court in Gray-Sadler cited two relevant grounds for contesting an election: "when legal votes have been rejected at the polls sufficient to change the result" or "for any error ... in counting the votes or declaring the result of the election, if such error would change the result," 164 N.J. at 474, 753 A.2d 1101 (citing N.J.S.A. 19:29-1(e) and (f)), and identified "[t]he essential question whether voters were denied the opportunity to vote for a candidate of their choice." Id. at 476, 753 A.2d 1101 (citing In re Moffat, 142 N.J.Super. 217, 223, 361 A.2d 74 (App.Div.), certif. denied sub nom. Princeton Tp. v. Bleiman, 71 N.J. 527, 366 A.2d 682 (1976)). The same statutory grounds implicitly are invoked by Murphy in this case, and the essential question here is the same: whether the voter who improperly wrote in Murphy's name, when Murphy's name was printed on the ballot, was unfairly deprived of the right to cast a vote for Murphy. We conclude that no such deprivation occurred here.
Unlike the voters in Gray-Sadler, the unknown write-in voter here was not deprived of the right to cast a vote for Murphy. The printed ballot gave the voter that opportunity. Every voter in the township election had a clear opportunity to vote for Murphy without writing in his name on the ballot. Moreover, a reasonable voter would understand, without explicit instruction, that it is unnecessary to write in the name of a candidate whose name already appears on the ballot, and that a vote for that candidate must be cast by marking the place on the ballot where that candidate's name appears. Significantly, only one of the 1,134 persons who voted by machine in this election made the mistake of writing in any of the six named candidates on the ballot.
Despite the Court's charge to protect each "citizen's constitutional right to vote for the candidate of his or her choice" and "the corollary right to have that vote counted," Gray-Sadler, supra, 164 N.J. at 474, 753 A.2d 1101, plaintiff's reliance upon Gray-Sadler to compel a new election here is misplaced.
In another case involving the validity of write-in votes for a candidate whose name was printed on the ballot, In re General Election Held in the Tp. of Monroe, 245 N.J.Super. 70, 583 A.2d 1154 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991), several voters who wrote in the name of the candidate also marked the candidate's name where it appeared on the printed portion of the ballot. The Law Division judge held that the entire ballot of each such voter was invalid. We reversed, and held that those voters were entitled to have their votes counted  that is, their votes on the printed portion of the ballots. Id. at 73, 583 A.2d 1154. See also Petition of Keogh-Dwyer, 85 N.J.Super. 188, 203, 204 A.2d 351 (App.Div.1964), rev'd on other grounds, 45 N.J. 117, 211 A.2d 778 (1965), in which we held that N.J.S.A. 19:16-3f barred election officials from counting a write-in vote for a candidate whose name appeared on the ballot.
The election laws unambiguously instruct the election authorities on the proper counting of votes in this situation. N.J.S.A. 19:53A-7f provides, in pertinent part: "Before write-in votes are counted they shall be compared with votes cast on the ballot card for the same office.... Votes cast for duly nominated candidates on the ballot card will not be voided because of an invalid write-in vote, but if otherwise valid shall be counted." Further, *1184 N.J.S.A. 19:53A-10 provides: "Any overvote or misvote for one or more offices shall not invalidate the entire ballot." Murphy has provided nothing that evidences a reasonable possibility that the statutory instructions for counting the votes were not followed here.
We are satisfied that the election of Ralph Bayard as the third Commissioner in Long Beach Township was properly certified, and that the Board was correct in refusing to count the single write-in vote for candidate Peter L. Murphy. Nonetheless, this case suggests that a more complete instruction on the ballot with respect to the execution of write-in votes would be salutary. While not constitutionally required, nor required by current law, an explicit instruction would impose no significant burden upon the election authorities. The ballot might include, for example, language such as the following:
The write-in portion of the ballot is provided only for the purpose of voting for a person whose name does not appear on the printed ballot. A write-in vote for a candidate whose name does appear on the printed ballot will not be counted.
We recommend that the Legislature consider requiring such a modification to all New Jersey election ballots.

VII.
Plaintiff argues that he was entitled to discovery before his complaint was dismissed. There is no question that summary judgment pursuant to Rule 4:46 normally is not appropriate before the party resisting such a motion has had an opportunity to complete the discovery relevant and material to defense of the motion. Velantzas v. Colgate-Palmolive Co., Inc., 109 N.J. 189, 193, 536 A.2d 237 (1988). Here, as defendants argue, plaintiff brought his complaint under the authority of N.J.S.A. 19:29-2, which provides for a fast track proceeding,[15] and by Order to Show Cause, implicitly initiating a summary proceeding pursuant to Rule 4:67. The nature of such an action does not normally warrant the full-scale discovery permitted in other civil lawsuits. Moreover, objection to a summary judgment motion on the basis that it is premature requires the resisting party to demonstrate with some specificity the discovery sought, and its materiality. Auster v. Kinoian, 153 N.J.Super. 52, 56, 378 A.2d 1171 (App.Div.1977).
Murphy's discovery argument respecting the rejected write-in vote appears aimed at learning whether the voter also marked Murphy's name on the ballot, and if so, whether that vote was counted. If such information was potentially available before the machines were cleared, it was not available thereafter, and Murphy's argument in that respect is therefore moot.[16]

*1185 VIII.
We affirm the orders appealed from denying relief to plaintiff in this case.
NOTES
[1] We use the term "write-in" throughout this opinion, as used in the election statutes, e.g., N.J.S.A. 19:53A-5e, -7f, although the computer screen apparently provides for a "write-in" candidate's name to be entered by touching the letters of the name on a virtual keyboard on the screen.
[2] Printouts from each of the six computer voting machines used in the election, serial numbers 13363 through 13368, display the number of votes cast for each of the six candidates. Each printout also shows the number of write-in votes cast on the machine, as well as the write-in (literally, typed in) candidate's name.
[3] We shall address the rejection of the write-in vote for Murphy in Part VI of this opinion.
[4] The election laws were amended by L. 1999, c. 232 to provide for provisional ballots to be cast in the case of an unresolved challenge at the polls; the challenged voter may cast a paper ballot, which is to be sealed until the right to vote has been determined. See N.J.S.A. 19:53C-1 through 20; see also N.J.S.A. 19:12-7(f); N.J.S.A. 19:31-11; N.J.S.A. 19:48-3.2, -3.13.
[5] Printouts from each of the six computer voting machines, serial numbers 13363 through 13368, display the number of votes cast for each of the six candidates. Each printout also shows the number of write-in votes cast on the machine, as well as the name written in (actually typed in on the computer).
[6] N.J.S.A. 19:57-23 provides, in pertinent part: "Such ballot must be received by [the county] board [of elections] or its designee before the time designated by R.S. 19:15-2 or R.S. 19:23-40 for the closing of the polls, as may be appropriate on the day of an election."

N.J.S.A. 19:57-26 provides: "All valid ... absentee ballots received by the county boards prior to the time designated for the closing of the polls for each election shall be counted."
[7] N.J.S.A. 19:28-1, as of May 2004, provided, in pertinent part:

When any candidate at any election shall have reason to believe that an error has been made by any district board or any board of canvassers in counting the vote or declaring the vote of any election, he may, on or before the second Saturday following such election, or declaration of any board of canvassers, apply to a judge of the Superior Court ... for a recount of the votes cast at the election....
This statute was recently amended to expand to fifteen days the time within which a candidate can challenge the election in the Superior Court. L. 2005, c. 150. The timeliness of Murphy's complaint is not in issue here.
[8] A signed, certified mail return receipt was submitted to the court.
[9] All of the candidates had notice of the Attorney General's request, and none filed any objection or appeared in court to object.
[10] While that date was well short of the twenty-eight days normally required before hearing a summary judgment motion, N.J.S.A. 19:29-4 provides that trial on a petition contesting an election is to be scheduled between fifteen and thirty days after the filing of the petition. N.J.S.A. 19:29-5 allows the court to adjourn the trial up to thirty days. Thus the time periods provided by court rules for other civil litigation are clearly foreshortened. Although Murphy raises that alleged procedural irregularity in his brief, he submitted written opposition and argued against defendants' motion. Additional discussion below in this opinion will demonstrate that the accelerated motion argument did not affect plaintiff's substantive rights.
[11] There was undisputed evidence that the closing and quarantine of the Hamilton Postal facility delayed mail delivery to the Mercer County Board of Elections by one day.
[12] N.J.S.A. 19:47-1 provides the following definition: "Irregular ballot means a vote cast, by or on a special device, for a person whose name does not appear on the ballots." (Emphasis added).
[13] N.J.S.A. 19:15-28 provides, in pertinent part:

Nothing in this Title shall prevent any voter from writing or pasting under the proper title of office in the column designated personal choice the name or names of any person or persons for whom he desires to vote whose name or names are not printed upon the ballot for the same office or offices. . . .
[Emphasis added.]
[14] Murphy's argument about the write-in vote is based on two alternative possibilities: (1) that the voter's entire ballot was improperly rejected, instead of just the write-in vote (with the possibility that the voter also cast a valid vote for Murphy) which was not counted, or (2) that the voter failed to mark Murphy's name on the printed portion of the ballot which was counted. Neither possibility persuades us that the write-in voter was deprived of his right to vote, or that Murphy or the township was deprived of a fair election.
[15] N.J.S.A. 19:29-6 does grant the court power, however, to compel production of witnesses, voting records and equipment where warranted on a recount application.
[16] Recent legislation has amended N.J.S.A. 19:48-1 and N.J.S.A. 19:53A-3 to add the following requirement for all voting machines, mechanical or electronic, beginning in 2008 (or later). L. 2005, c. 137:

By January 1, 2008, each voting machine shall produce an individual permanent paper record for each vote cast, which shall be made available for inspection and verification by the voter at the time the vote is cast, and preserved for later use in any manual audit. In the event of a recount of the results of an election, the voter-verified paper record shall be the official tally in that election. A waiver of the provisions of this paragraph shall be granted by the Attorney General if the technology to produce a permanent voter-verified paper record for each vote cast is not commercially available.